Mr.’ Justice DANIEL,
 

 after having read the (Statement of the case prefixed to. this report, proceeded to deliver the opinion of the court.
 

 In' reviewing the grounds relied on by the complainant as the foundation of his claim to relief, the second and third, being coinci-. dent with the order ■ and progress of the transactions between the parties as stated in the bill, and evincing especially the circumstances and the attitude under which this approach to a court of equity hás been made, will be first considered, and this examination will be premised by,stating the following principles of equity jurisprudence, which may be affirmed to be without exception ;— that whosoever would seek admission into a court of equity must come with' clean hands J that such a court will never interfere in opposition to conscience or good faith; and again, and in intimate connection with the principles just stated, that it will never be called into activity to rémédy the consequences of laches or neglect, or the want of reasonable diligence. Whenever, therefore, a competent remedy or defence shall have existed at law, the party who may have neglected to use it will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice. The effect of these principles upon the statements of the complainant is. obvious upon the slightest inspection. The complainant alleges, that the obligation to which he had voluntarily become a party was intentionally made in fraud of the law, and for this reason he prays to be relieved from its fulfilment. This prayer,.too, is preferred to a court of conscience, to á court which touches nothing that is impure. The condign and appropriate answer to such a prayer from, such a tribunal is this;,— that, however unworthy may have been the conduct of your opponent, you are confessedly
 
 in pari delicto ;
 
 you cannot he admitted here to plead your own demerits ; precisely, therefore, in the position in which you have placed yourself, in that position we must leave you. • And so with respect to the omission by the complain
 
 *205
 
 ant to set up at law either the failure or the illegality of the consid» eration for which the note was given ; no reason is perceived why ■such a defence should not have been made or attempted. The action at law was founded upon a simple promissory note, a
 
 parol
 
 contract in legal intendment, and not upon a specialty ; the consideration was fully open to investigation, and it was surely a sufficient indulgence to the payees of that note to have been permitted
 
 once
 
 to set up a defence by which payment may have been resisted, whilst the whole consideration received by them for their undertaking would have been withheld, and absolutely possessed, and enjoyed by them. But these payees of the note did not stop even here. After the first judgment recovered against them, and after the levy of an execution sued out on'that judgment, they voluntarily go forward, the compilainant- amongst them, execute to the respondent their forthcoming bond, equivalent, in effect to a confession of a second judgment,-and after these repeated-and.'concjusive recognitions .of their liability, they invoke the aid of a court which repels whatever is unfair, or even illiberal, to declare that these proceedings, thus solemnly had and evidenced of record, shall be utterly null; that the respondent shall be stripped of his property without the ■promised equivalent, and that 'property be secured, if not to the complainant, to one with whom he was associated in effecting its rer linquishment by the owner.
 

 Recurring now to the first ground for relief set up in the bill, being that on which greatest stress is laid, — viz., the suretyship of the complainant, and the wrong ¿lleged to have been done him by a change of his position'and responsibility, by the indulgence extended to his codefendant Pinkard, — let us test this ground, first, by the proofs upon the record, and next, by trying the accuracy of the' deductions attempted to be drawn from them. The promissory note, on which the action at law was founded, is made an exhibit, and it appears that to the name of Pinkard, the first signer of that note, there is added the word “ principal,” and to the name of each of the other makers is added the word “ surety.’.’ ■ .It is insisted by the respondent, that these designations upon the note had no effect upon the' obligations of these parties to bM, however it might be supposed to operate upon their relations with each other.; that with respect to the respondent all the makers of the note were from the beginning principals, but that at any rate, after their liability was fixed by judgment upon the note,' and still moré after their uniting in the forthcoming bond, in the nature of a second judgment, their equal responsibility as principals was irrevocably settled. In connection with this view of the case it may not be irrelevant here to remark, that by the statute of the State of Mississippi, promissory notes, though it be not so expressed upon the face of them, are declared in.their legal effect tp be joint and several.' See Howard & Hutchinson’s Statutes of Miss. 578. The proposition contended
 
 *206
 
 for by the respondent, were it necessary^here to pass upon it, would not be found without support from decided cases.. Thus, for in-, stance, it. was ruled by Chancellor Kent in Bay and others
 
 v.
 
 Tallmadge, 5 Johnson’s Chancery Reports, 305, that where bail become fixed with the payment of the debt of the defendant, their character of bail ceases ; that after judgment and execution against bail and sureties, there is an end of the relation of principal and surety, and the bail cannot claim any advantage against the creditor on the ground of want of diligence in prosecuting the principal debtor. In Prout
 
 v.
 
 Lennox, 3 Wheat. 520, it is laid-down by Livingston; Justice, in delivering the opinion of the court, that “ the indorser of a note, who has been charged by due notice of the maker’s default, is riot entitled to the aid of a court of equity as a surety. But without pushing further an investigation which is unnecessary to the decision of the case before us, let it be conceded that the complainant was strictly a surety in the note on which the judgment was obtained at law : have any of his rights been' impaired, or have any new rights grown up to him, springing from the conduct of the respondent or his agents in reference to that judgment and the proceedings had thereupon ? The directions given by the attorney for the plaintiff in the judgment have- been set out
 
 in extenso.
 
 These,' directions express upon their face no consideration received or promised for the forbearance^ — no limitation upon the right of the plaintiff at law to proceed upon his execution, — no condition or stipulation of any kind; nor is there a tittle of proof as to the existence of any such consideration, limitation, or agreement, expressed or understood. We see nothing in the case but a voluntary forbearance, which the plaintiff was at perfect liberty to terminate at his pleasure. What say the authorities in relation to a proceeding of this character ? In the case of Rees
 
 v.
 
 Berfington., 2 Yes. jr., cited and pressed in the argument, the interposition of the chancellor was founded upon the ground of
 
 an actual and substantive■ change
 
 of the relation and responsibility of the surety, and in such a case Ins lordship very justly observed, that he would not undertake to calculate the degree of injury which might have flowed from it; that if the situation had in fact been changed, that-was sufficient to release the • stirety altogether, for it was an attempt to impose on him a responsibility he had never assumed ; but in the case before us was there any such change wrought by a mere voluntary forbearance, creating no obligation anywhere, —contracting with nothing, nor with any person ? A few of the numerous cases, both at law an&in equity, which are applicable to this question will be adduced.
 

 Reynolds
 
 v.
 
 Ward, 5 Wend. 501. It was ruled, that an agreement
 
 without consideration,
 
 enlarging the- time of payment,, was not a discharge of the surety to the note. So held on demurrer to a plea by surety, averring that at the time when the note became due the principal was able to pay, and would have paid had not the’
 
 *207
 
 time been extended, and, that after the note fell due the principal became insolvent. Held also, in that case, that a promise to pay-interest during the time of forbearance was no consideration- for such agreement.
 

 Bank of Utica
 
 v.
 
 Ives, 17 Wend. 501. Indulgence to the' maker of a note, on
 
 receiving securities
 
 from him, does'not discharge the indorser, where there is no valid agreement for giving time of payment for a definite period ; and per Nelson, Chief Justice, in this case, — “ Mere indulgence at .foe will of the creditor, extended to the debtor, in.no way discharges the obligation of the surety ; if it did, it would be a most inconvenient and oppressive rule, as then suits must immediately follow the maturity of paper. -It is a settled rule, that there must be a valid common law agreement to give time, founded of course on a good consideration, to have this effect.”
 

 Norris
 
 v.
 
 Crummie, 2 Randolph, 328. It is ruled, that indulgence granted by a creditor to the principal debtor will not discharge the sureties of such debtor, unless the creditor shall have bound himself in law or in equity not to pursue his remedy against .foe principal' for a definite length of'time.
 

 Hunter’s Administrators
 
 v.
 
 Jett, 4 Randolph, 104. A surety will not be discharged by indulgence granted by foe creditor to foe principal debtor, unless such indulgence ties up the hands, of the creditor from pursuing the debtor at law ; nor will the surety be discharged evén then, if the indulgence shall have been given with his knowledge and assent.
 

 McKinney’s Executors
 
 v.
 
 Waller, 1 Leigh, 434. A mere indulgence to a principal debtor by a creditor, not binding him to suspend his proceedings for any time, though such indulgence be given at foe very time foe sheriff is about to levy execution on the property of foe principal, and although, in consequence of . that indulgence foe principal debtor has been enabled to remove his properly out of the reach of future process, was not, even in equity, a discharge of the surety.
 

 Alcock
 
 v.
 
 Hill, 4 Leigh, 622. A creditor suspends execution on a forthcoming bond for several years, but he does so without consideration, and he no wise binds himself to suspend execution for any definite time ; the principal ánd all the sureties but one become insolvent ; and then the creditor sues out execution against foe solvent surety. Held that. the surety is not entitled to relief in equity. The requisites .in that case stated as indispensable for absolving the surety are, first, a consideration ; second, a promise to indulge ; third, the definite nature of such a promise ; and, fourth, the absence of assent by the, surety.
 

 The last case which will be cited on this point is that of M’Lemore v. Powell et al., 12 Wheaton, 554, in which it was ruled by this court, that an ...agreement between a creditor and, the -prin
 
 *208
 
 cipal debtor for delay, or otherwise. «hanging the nature of the Contract, in order to discharge the surety, must be an agreement having a sufficient consideration to support it and be binding upon the parties.’ .There, is not one of the authorities above cited which does not' more than cover the predicament presented by the case under consideration. Those authorities furnish examples of agreements, — arrangements between creditor and debtor, —: situations from which something like hardship might possibly spring. In the. present case, there is neither contract, arrrangement, nor even’a scintilla of right, on which either law; or equity cán lay hold. The complainant, after permitting a judgment on the note, without attempting a-defence at law, and after execution was levied upon the- judgment, voluntarily united in withdrawing the effects of his associate from the operation of that process, and by this very act bound himself with the force of a second judgment for the validity and for the satisfaction of the demand. After this course off conduct, he addresses himself to a court of equity, práying that court to undo all that he has voluntarily and deliberately performed, and in-order to accomplish this end, he seeks to stamp his own acts with illegality .from their very inception. For such purposes he surely would have no standing and receive no countenance in.a court of equity, upon any of its known principles: We hold the décree, therefore, of the Circuit Court, dissolving the- injunction awarded the complainant below, and dismissing his bill with costs, to be correct ; and that decree is accordingly affirmed.
 

 Order.
 

 This cause came oh to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the .said Circuit Court in this cause be and the same is hereby* affirmed with costs.