DECIDED IN THE

## Circuit Court of the District of Columbia

FOR THE

## COUNTY OF WASHINGTON,

### MARCH TERM, 1848.

---

### JOHN MASON, JR.,

*vs.*

### THOMAS P. JONES AND ALEXANDER HUNTER, MARSHAL OF THE DISTRICT OF COLUMBIA.

IN EQUITY. DECIDED MARCH TERM, 1848.

*Motion to Dissolve an Injunction.*

1. The proper order, where the defence set up to a promissory note is fraud, is to restrain its negotiation and permit the parties to proceed at law.
2. An injunction against negotiating a promissory note is not violated by suing thereon, and proceeding to judgment and execution.
3. By praying that a bill in another cause may be made a part of the present bill, all its statements are considered as repeated, and must be answered.
4. All the facts stated in the bill, not denied by the answer, are taken as true on a motion to dissolve on final hearing. Facts not admitted must be proved.
5. Denial of fraud (charged to have been committed by an agent) is not sufficient on the information of the agent and the belief of the principal.
6. Fraud in the origin of a negotiable note is no defence against a *bona fide* holder without notice.
7. But a member of a company who discounted individually a note belonging to the company, without knowledge of any fraud in its origin, is affected by the fraud of the agent of the company.
8. Where a judgment has been confessed by an attorney through the negligence of the defendant equity will not relieve.
9. Where B. filed his bill against I. and others, alleging fraud in a contract, which was not answered, and M. afterwards filed his bill against I. for relief against a judgment at law in relation to the same matter, though the fraud can not be tried in M.'s suit, the injunction obtained by him will be continued until B.'s suit shall be tried or disposed of.
10. It seems that after judgment an endorser is considered in Equity a principal and not a surety.
11. Courts of Law and Equity have concurrent jurisdiction in cases where fraud is the ground of relief, and the Court which first obtains possession of the case must settle the matter conclusively.

In the spring of 1839 Abraham Barnes purchased 125,000 cuttings of the .*morces multicaulis* of J. F. Callan, agent of the Washington City Silk Co., and gave his negotiable notes with M. Clark and Mason as sureties for the price of the same. The aggregate of the notes was $5,000, payable, it was believed by Barnes, in two payments of $2,500 each on the 15th of Oct. and Nov., 1839. Callan was represented, when the purchase was made, to have warranted that the cuttings would vegetate and grow if certain instructions were followed. Barnes did not examine them until they were delivered, when he was struck with the dry appearance of the cuttings; notwithstanding, he set them out, following the instructions; but all of them, except about 2,700, did not vegetate, and at the same time of the sale were dead and worthless. Upon discovering this Barnes, on June 19, 1839, filed his bill, stating as above and charging that the contract was made by Callan as the agent and with the knowledge of the members of the company, and that he knew the worthless condition of said cuttings, and fraudulently misrepresented the quality and condition thereof; and his said notes being negotiable, he sought an injunction against the same being negotiated or sued on, and an abatement to the extent of the partial failure of the consideration. The members of the company were Dr. Jones, Pierce Hall, Callan and a number of other persons, who were made defendants. It was charged that the notes were then held by said Callan, or some member of the company, and by no one who had paid a valuable consideration therefor without notice.

An injunction was granted " against negotiating or passing away said notes," which was returned served on all the defendants. The defendants did not appear to this suit nor answer said bill. On February 10, 1841, a writ was issued in the name of said Jones against the complainant, Mason, on a note dated April 15, 1839, made by said Barnes to said Mason or order, endorsed by him and M. Clarke, payable on October 15th, following, for $1,250. Mason was arrested, and special bail was put in. Mr. Marbury found his ap-

pearance entered; but having received no instructions, and never having seen Mason, he entered judgment at March Term, 1842. A *ca. sa.* was issued, and Mason was taken into custody.

On January 13, 1843, Mason filed his bill, setting out the purchase of the cuttings by Barnes of Callan, as the agent of the company, and of one Kinsman, of Philadelphia, the warranty, and worthlessness of the cuttings as above stated; the giving of notes for the price, and the injunction granted at the instance of Barnes as aforesaid; the suit by Jones upon " one of said notes," given for said cuttings; that he had been sued by Kinsman upon " three of said notes," and had employed Brent & Brent, who were his attorneys, and to whom he had explained the transaction, and requested them to attend to any suits on said notes; that he attended to Kinsman's in person, and employed those gentlemen; but being unable to do so when sued by Jones, he requested a friend to enter bail and to employ counsel, who, by mistake, entered Mr. Marbury's name, instead of Brent & Brent; that he often spoke to them afterwards of his cases, but without naming this of Jones', as the defence was the same as Kinsman's, who became non-suit; that his friend did not inform him of the entry of Mr. Marbury's name; and the first he knew of it, and of said judgment, was upon examining the docket after being taken in execution; that the said note for $1,250 was one of those given for said cuttings and enjoined as assigned, which, and the total failure of the consideration, were known to said Jones at the time the note was delivered to him, if he did not then hold the same for himself and the other members of said company; all of whom were charged to be parties to said fraud. The bill further stated that Barnes resided in Washington County, Maryland, and that the demand of the said note was made in the City of Washington. The note was dated, but not made payable there. The bill and injunction of Barnes was referred to as a part of this bill. Jones was required, among other things, to answer what office he

held in said company, and what sum he gave for said note,. in what paid, and to whom.   The prayer was that the judgment might be opened, or relief granted here by perpetual injunction and cancellation of the said note.   The injunction was returned served on Jones.   He did not appear or answer.   On June 24, 1845, a perpetual injunction was decreed *nisi*, which was served on July 1st; and on October 24, 1845, before the decree became absolute, Dr. Jones' answer to Mason's bill was brought into court and offered to be filed.   Objection being made, the matter stood over, and was heard and leave granted at the October Term.

REDIN and BRADLEY in support of the motion to dissolve; MAY against the motion.

The counsel in support contended that this was not a case for the interference of a court of equity.

I. Jones was not in contempt.   He obtained the note *bona fide* before Barnes' injunction, and had a right to proceed to judgment.   That injunction was against the company collectively, and was not meant to reach him individually.   Barnes' injunction bond was to the parties, and would be no security to Jones as the individual holder of the note.   The notes mentioned in Barnes' bill are not the same as those in Mason's.   The order for the injunction was not against suing, but negotiating merely.   It was settled on the presentation of the answer that the contempt, if one, was in another cause, and could not be urged in this. The remedy for contempt in violating an injunction is attachment.   The judgment cannot, for that reason, be set aside.

II. But the defences set up are defences at law.   1. As to the fraud and warranty, they are denied; if upon the information of Callan only, the charge is merely upon the information of Barnes.   Mason's bill does not aver that the company knew the cuttings were bad at the time of the sale, nor that the statements in Barnes' bill are true.   What was given for the note, and what office Jones held, are immaterial inquiries, and cannot serve the complainant in his

defences of fraud and failure of consideration. The denial of the defendant meets fully every material allegation in both bills. But, if not sufficiently denied, fraud and warranty are no defence against Jones, a *bona fide* holder of the note without notice; gaming and usury are the only defences against an innocent third party (Ch. on Bills); fraud is not, except between the original parties, (Thornton *vs.* Winn, 12 Wheat., 183,) and on warranty the remedy was at law; no circumstances of fraud are stated, and if they had been, the defence was at law. 2. The failure of consideration is denied, but it is averred to be total, and that is also a full defence at law. 3. No advantage can be taken in equity of any illegality in the demand and notice after judgment. There is no averment that the residence of Barnes was known to Jones. If unknown, the note was properly demanded at the place of its date.

III. The judgment was properly obtained and cannot be stricken out. A party is bound by a judgment confessed by his attorney of record, unless fraud or collusion with the adverse party can be shown. He will not be relieved where it is produced by his own negligence. In this case the complainant did not inform his bail that Brent & Brent were his attorneys, and requests him to have their appearance entered; nor did he give any attention to the suit afterwards. There is no relief under such circumstances. 36 Law Lib., 259; 2 Story, 885, 887, 889, 896; Prather *vs.* Prather, 11 Gill & J., 110; Fowler *vs.* Lee, 10 Gill & J., 358. The understanding at the bar, as to the confessions of judgments, is that the defence must be made known at the same time, and an opportunity afforded for a trial, before the jury are discharged; else a defendant might wait till the witnesses were dead and limitations would be a bar.

MAY, *contra:*

I. It is a case of partial failure of consideration, made so by reference to Barnes' bill. The fraud charged is denied on the information of Callan only, which is not sufficient. Alex. Ch. Prac., 86. The defendant was one of the com-

pany, and is charged to have known of the fraud, but, if no personal knowledge, he was answerable for the misrepresentations of Callan, the agent of the company. He is not a *bona fide* holder of the note. He received it as the property of the company, of which he was one. He, therefore, knew the consideration, or had reason to know, and was bound to inquire. His answer is not full; he does not state what office he held in the company, nor what he gave for the note. A case of fraud is made out in Barnes' bill, which the defendant and other members of the company were bound to answer.

II. The judgment was entered by mistake. The complainant was lulled into security by the former injunction. He had no knowledge of the appearance of Mr. Marbury. He had a defence which he had instructed his counsel, Brent & Brent, to make to all these notes. Equity can interfere. 2 Story Eq., secs. 885, 887, 889, 896; 6 Gill & J., 309;[1] 2 H. & Gill, 179;[2] 9 Wheat., 532, Smith vs. McIver; 10 Peters, 497, Brown vs. Swann; 5 How., 141, Truly vs. Warner; 7 Cr., 332, Marine Insurance Co. vs. Hodgson; 5 How., 204[3], 36 Law Libr., 61.

III. Jones was under disability to sue. The injunction in Barnes' case was not to sue. The suit brought against Mason was on the same note, and was a violation of that injunction. The defendant was in contempt, and shall take no benefit from his illegal act. There will be a restoration of the rights of the parties as they stood before the suit was brought. The remedy for breach of an injunction is not merely attachment, but the acts done will be treated as nullities. 3 Mer., 148, Partingdon vs. Booth; 6 Ves., 109,[4] 2d ed., 108; 1 Smith's Ch. Prac., 623; 14 Ves., 136,[5] a case of possession restored; 5 Munf., 187;[6] 2 Har. C. Pr., 222; Alexander, 86, 88, 92; 16 Ves., 144;[7] 17 Ves., 385;[8] 2 Anst.,

---

[1] Gott et al. vs. Carr.  [2] Offutt's Ad. vs. Offut.  [3] Creath's Ad. vs. Sims. [4] Downshire vs. Sandys.  [5] Osborne vs. Tenant.  [6] West vs. Belches.  [7] Bullen vs. Ovey.  [8] Leonard vs. Attwell.

556 ;[9] 3 Atk., 567 ;[10] 18 Ves., 487 ;[11] 2 Sim. & Stit., 577 ;[12] 3 Swanst., 626, Woodward *vs.* Earl of Lincoln; 9 Sim., 214 ;[13] 2 Dick., 703, Robinson *vs.* Byron ; 3 New., 294; 1 Gill & J., 212, Williamson *vs.* Carnan ; 1 Russ. Eng. Ch., 412 ;[14] 4 Cond. Eng. Ch. Cas., 344, Clark *vs.* Dew ; 4 Paige, 163, Hanley *vs.* Bennet; 2 Har. & J., 34 ;[15] 1 Bland, 353.[16]

Morsell, Associate Judge, delivered the opinion of the Court :

The first question to be considered is whether defendant has violated the injunction in the case of Barnes *vs.* Jones and others.

Both subpœnas and injunction, by the return of the Marshal, were served on all the defendants.

The order for the injunction was obtained on 19th June, 1839, as " Let the injunction issue to restrain the defendants from *negotiating* or *passing away* the *promissory notes* in the *bill* mentioned until the further order of the Court." It is erroneously stated in Mason's bill that the injunction was to prevent Jones and others from " *suing* upon *the same.*" This is not included in the order of the judge, though it appears to be interlined in the precept of injunction issued by the clerk. That order is in the words above stated, and I think it was entirely correct not to enjoin the bringing of suit by the original party, as the bill charges that the notes were obtained by fraud, the defence would have been available at law, and the party might have suffered great evil from being prevented from suing. He might have lost the security for the payment of his debt, which he might have had by a judgment. There might also be other evils occasioned which do not now occur to me. I find it sanctioned by authority, 3 Bacon's Abr. Inj., 651, " Injunction will be granted to restrain the negotiation of bills of exchange or promissory notes obtained by fraud, and in this case if the plaintiff support his motion by an affidavit of the truth of the facts

[9]Gadd *vs.* Worrall. [10]Anon. [11]Earnshall *vs.* Thornhill. [12]Marsack *vs.* Bailey. [13]Woodley *vs.* Boddington. [14]Hood *vs.* Aston. [15]Lynch *vs.* Colegate. [16]Gibson *vs.* Tilton.

stated in his bill, the injunction will be allowed immediately upon the bill being filed; but the defendant should, upon intimation of the suit by negotiating the security, defeat its object (in note), "where a motion was made to restrain a defendant either from bringing an action on a promissory note, suggested to have been given for undertaking to bring about a marriage, or to prevent him from assigning it over, the Court made an order upon the defendant to keep the note in his possession, and not assign or endorse it, but would not extend the injunction so far as to inhibit the payee himself from proceeding at law."

Smith *vs.* Ayswell, 3 Atk., 566, Amb., 61. In the case in Atk. the chancellor says: "Here it is not only charged by the bill to be a marriage brokerage agreement, but the fact supported by an affidavit, and therefore I will make an order on the defendant to keep the note in his own possession and not assign or endorse it over to any person whatever, *but shall* not extend the injunction so far as to prevent him from proceeding at law. There being then for the reason, as well as the reasons already given in the opinion of the chancery judge in this case on the subject of allowing the answer to be filed, no violation of the injunction, the objections on that ground cannot avail."

The reason offered in support of the motion to dissolve will next be considered:

1st. As to the jurisdiction.

That the circumstances of the fraud ought to be stated in the charge of fraud in the bill, and not in terms only, and that none such are so stated.

2d. That the defence might have been made at law, and that it is now too late, there being no clear evidence of fraud or accident, or the act of the opposite party unmixed with any negligence or fault on the part of the complainant.

3d. The answer denies the fraud as to himself or Callan.

The bill in this case prays that the facts and things stated in Barnes' bill against this defendant and Callan, and sundry others, may be made a part of this bill, and I supposed it

must be so considered. It is objected that the complainant cannot have the advantage of the facts stated in that bill, because they are stated as of the knowledge of others, and complainant does not state in his bill " that he believes them to be true," but I suppose it must be understood that they become a part of the bill into which they are invoked according to the usual and common form, which is invariably with those words, and of course that this objection must be answered.

Barnes' bill, after stating particularly the attending circumstances and the contract and consideration made with Callan, the agent of the company of which the defendant in this case was a member, according to which the cuttings were affirmed and warranted to vegetate and grow, that he had no opportunity of examining and inspecting said cuttings unless they were delivered after the contract of sale. He charges that the whole lot of cuttings so purchased by him of said Callan, as agent aforesaid, was, at the time of sale, dead and utterly worthless except about 2,700 cuttings; proceeds to charge that, at the time of delivering said cuttings, they had not (with the exception just stated) been in the ground or any soil for some time, and were utterly valueless, *and that said Callan well knew the same,* and did fraudulently misrepresent the condition and quality of said cuttings, of which he also charges the other defendants in the suit had knowledge. And it seems to me that the bill filed in this case reiterates the same circumstances in substance, and charges a fraudulent knowledge of the same by the various parties to the contract, and the fulfillment of Barnes on his part. It appears then that the facts and circumstances of the fraud, and the fraud itself, are positively charged to have been practiced on the part of the defendants. What effect ought to be given to the answer? Admit that at the time stated in the bill, 1838, sundry persons, the names of some of whom are correctly given in said bill, and among whom were the defendants, united themselves into an association or company for the purpose,

among other things, of procuring and selling cuttings and trees of the *morus multicaulis,* and that they offered the same for sale, and authorized John F. Callan to sell for them, who acted for them in the City of Washington as their agent; it admits the contract made with Barnes, but denies that Callan warranted as the agent of the company as stated. Admits also that Barnes, for the cuttings, gave to Callan his four several promissory notes, made payable to complainant, and endorsed by him and Matthew St. Clair Clarke, but declares and avers that he was personally and wholly ignorant of the said transaction, and was not advised with or consulted in any part of them; nor did he ever know of them until long afterwards and after he had become the sole *bona fide* holder of the notes hereinafter mentioned (the one mentioned in the bill). But this defendant, on the information he has received from the said John F. Callan, positively, particularly and circumstantially denied that there are any fraud done, or attempted or designed, in the sale of the said cuttings by the said John F. Callan; that he is informed and believes that some part of the cuttings did vegetate and grow; that Barnes, as he is informed and believes, did not follow the instructions; denies that the consideration of the notes entirely failed; admits that the notes were given for the benefit of the said company as a company; admits that an injunction was obtained by Barnes as stated, but that long before the granting of the injunction the said defendant, without any knowlege of any facts, and without having heard anything to cast suspicion upon the said notes, and without any knowledge or information about the consideration for which they had been given, *bona fide* and in the regular course of dealing and business, received one of the said notes, being the one mentioned in said bill, and gave full value therefor; this was within a few days after its date; that he had received the same from the said Callan as the property of the said company, but that he, this defendant, received it as any other person would have done, relying on the credit of the endorsers thereon more than that of

the drawer; excuses himself for a disobedience to the in-
junction ; does not recollect that it was served on him.  He
did bring the suit, &c., utterly ignorant of the facts with
respect to Mr. Marbury, &c., except that he did confess the
judgment, &c.

That if the facts therein stated are true (which he does
not admit, &c.), they are insufficient to give jurisdiction to
this Court to go behind the said judgment at law, and he
prays to have the same advantage as if he had pleaded the
same; denies all fraud and combination, &c., and declares
and averring that on the 18th April, 1839, he received the
said notes *bona fide* and gave full value therefor in the regu-
lar course of business; excuses himself for not having put
in his answer earlier, &c.

It is objected that this answer does not fully respond to
the charges contained in the bill, and that those which are
not answered are to be taken as true.

The rule laid down in 6 Cranch, 51[1], is: "If the answer
neither admits nor denies the allegations of the bill, they
must be proved on the final hearing, but upon a question
of a dissolution of an injunction they are to be taken to be
true."  As to the objection that he does not state what
office he held in the company, and what he paid for said note,
and whether the proceeds of the said note were for the use
of himself and the other persons named in the bill of com-
plaint, &c., and what sum of money did he give for said
note, he has answered that he was a member of the com-
pany; admits that he received the note; states that without
any knowledge or information of or about the consideration
for which they had been given *bona fide* and in the regular
course of dealing and business, he received one of the notes,
being the one mentioned in said bill, and *gave full* value
therefor; that this was within a few days after its date; that
he received the same from the said John F. Callan as the
property of said company, but that he received it as any
other person would have done, &c.  This seems to me suffi-

[1] Young *vs.* Grundy.

cient to answer all the material part of those interrogatories.

The next and last objection is, "that a case of fraud has been charged in the bill, and the answer does not meet it to the extent of it." The answer, besides the general denial of all fraud and evil practice and all combination, &c., says: "But this defendant, on the information he has received from the said John F. Callan, positively, particularly and circumstantially denies that there was any fraud done, attempted or designed in the sale of the said cuttings of the said John F. Callan, and he sufficiently denies it as to himself by showing his entire ignorance of all the circumstances, &c. The question is, what weight is due to the denial merely upon information of Callan and *his belief*, without any knowing? The charge is, that *Callan* as agent of the company was guilty of the *fraud*. Is the charge fully met?

The bills are injunction bills, and filed on oath. It is true the answer of the defendant is on oath, but it is not of fact from his own knowledge. He declares he was altogether ignorant of them. His answer is, therefore, nothing more than his belief of what another has informed him. I do not think such an answer ought to have the weight of a full and positive denial of the facts respecting the fraud as stated in the bill. The principle will be found established in the cases of 9 Cranch, 153[2]; 5 Peters, 111[3]. In the last case the Judge, in delivering the opinion of the Court, says: "It is to be borne in mind that the bill does not charge the agreement to have been made with the bank, but with their attorney. The denial by the bank is not, therefore, of any matter charged to have been *within their own knowledge*. They could, therefore, only speak of their belief, or from information received from their attorney, and not from their own knowledge of the transaction." This was also the case of an injunction bill. It has been contended, however, that the defendant in this case, being the holder of an endorsed negotiable promissory note, before the same be-

---

[2] Clark's Ex's *vs.* Van Riemsdyk.   [3] Union Bank of G't *vs.* Geary.

came due for a *bona fide* and valuable consideration, and without notice, cannot be affected by the fraud. This, as a general proposition, is unquestionably true. Do not the circumstances, however, of this case show the principle inapplicable? It is admitted that at the time of the transaction the defendant was a member of the company; that Callan was the authorized agent to make the sale and contract of sale, and that he acted for them in the contract with Barnes for the 125,000 cuttings; who gave his several promissory notes drawn by said Barnes and endorsed by Mason and Clark to Callan as such agent, for the benefit of the company, as such company; one of which notes some few days after the date was delivered by said Callan to him, the defendant, as the property of said company. Was he not, therefore, fully affected by the actings and doings of Callan in the transactions as much as any other member of the company, and as much so as if he had in fact known and been cognizant of all the facts and circumstances charged as fraudulent, and although he received it under the circumstances stated by him? If so, the principle relied on by him, above stated, is not applicable.

The next part of the case presents a question of more difficulty. It is in relation to the equity jurisdiction of this Court in a case which has already been before it as a Court of Law between these same parties, and where the complainant could have availed himself of the matter set up in this case and had full and ample justice done to him, yet did not even attempt it, but, on the contrary, confessed a judgment to the defendant for the amount of the claim.

The rule is that when a party has a good defence at law and omits to make it, he cannot afterwards upon the same ground have relief in equity. 6 Gill & John., 312[4], in the Court of Appeals, the judge in stating the opinion of the Court says: "The well settled general rule being that a Court of Equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached

---

[4]Gott *et al. vs.* Carr.

by facts or on grounds of which the party seeking the aid of chancery *could* not have have availed himself at law, or was prevented from doing it by *fraud* or *accident* or the act of the opposite party, *unmixed* with any negligence or fault on his own part," and the principle is the same where at law there is a confession of judgment. Many other cases might be here stated establishing the same rule, but I really do not think it necessary. The question then is, has there been any such circumstances of fraud or accident or the act of the opposite party, unmixed with any negligence or fault on his (complainant's) own part? To show this it has been said that the injunction granted by the Court in the case of Barnes had the effect to lull him into security, &c., and, secondly, that Mr. Marbury, instead of Messrs. Brent & Brent, by mistake and accident was employed as the attorney in the case, and, not knowing there was a defence, confessed the judgment. With respect to the judgment, it was granted in a case in which the complainant was no legal party, and, as I have before said, the judge made no order inhibiting the defendant in that case to sue on the note, and the service of the writ in the case was amply enough to warn the complainant that the defendant did not consider himself thereby restrained from suing on the note, and the additional circumstances, which he states, of his having sometime before sued Hinsman on three of the notes given for the same contract, and feeling it necessary to attend to them in person, fully proves this excuse not to be sound. As to the mistake in employing Mr. Marbury, let the circumstances be considered proved as stated by the complainant himself. The suit was brought against him on the 10th of February, 1841, and in the usual course progressed until March, 1842, when the judgment was confessed, being the regular trial Court; that, not being able to attend to the case in person, he applied to a friend to enter special bail for him and to employ counsel, and that his special bail through mistake entered the appearance of Mr. Marbury, attorney at law, instead of Brent & Brent,

who alone were acquainted with the facts of the case and of the defence, and to whom the complainant had spoken; that if sued as an endorser on said notes, &c., he wished the said Brent & Brent to attend to the cases for him, of which he (the complainant) would inform them; that he was never informed by his said special bail that he had directed Mr. Marbury to appear for him, nor did he know the same until after judgment had been rendered against him, and not then did he know that any judgment was obtained until after a *ca. sa.* had been served upon him.

It appears, then, that Mr. Mason gave no directions to his bail, who he employed as counsel for him, or that he (the bail) knew that the Messrs. Brents were, nor does it appear that he ever inquired of his bail who he had employed, or that he ever informed the Messrs. Brents and requested them to appear. The suit was depending the usual time of twelve months, without any attention on the part of the complainant in the preparation for the trial; no order to summon witnesses; no reasonable and proper endeavor to procure evidence, but a total indifference. He must have known when, by the rules of the Court, the trial Court would be. Suppose Brent & Brent had been employed, could he think that it would not be necessary to have his proofs of the fraud ready to enable them to make the defence? instead of which he does not make any inquiry of them about it. Can it be said that this is the case of accident unmixed with any negligence of fault on his part? On the contrary, does there not appear to have been gross negligence?

But although the Court has no jurisdiction to try and determine the question of fraud, for the reasons already stated, has it not the power and would it not be proper to continue this injunction to await the final decision of the case of Barnes against the defendant, with a number of other defendants hereinbefore mentioned? There is enough to show that that suit is to try the validity of the same contract with which the note in the case is connected, notwithstanding the erroneous description of the notes mentioned in that

bill. It is true that after the liability of the endorser becomes fixed by judgment, as in this case, he is to be considered as a principal, so decided in the case of 5 How., 206[5], and 3 Wh., 520[6]: "That the endorser of a note who has been charged by due notice of the maker's default is not entitled to the aid of a Court of Equity as a surety." But can we shut our eyes to the most unjustly oppressive and iniquitous effect which the complainant in this case would be made to suffer if he is not permitted to have the benefit of the recision of the contract, if such should be the event upon the trial of that case?

That suit was brought on the 19th June, 1839, and, according to the return of the Marshal, the defendants were all served with subpœnas. But no answers, I believe, have yet been filed. The delay in bringing it to issue has been certainly very great, but the case is still depending and undisposed of. It may be added that the defendants in this case cannot be said to be free from blame in occasioning the delay.

Fraud being the ground upon which relief was sought from the obligation of the contract, this might be availed of either in a Court of Chancery or of Common Law. In such case the rule is, "The Court which first has possession of the subject must determine it conclusively, and has a right to retain it exclusively of the other. (9 Wh., 535.[7]) Chief Justice Marshal, in delivering the opinion of the Court, says: "In all cases of concurrent jurisdiction, the Court which first has possession of the subject *must* decide it." Again, at 536: "Admitting, then, the concurrent jurisdiction of the Courts of Equity and Law in matters of fraud, we think the cause must be decided by the tribunal which first obtains possession of it, and thus each Court must respect the judgment or decree of the other."

The Court of Chancery had first possession of the contract in connection with this note, and had an exclusive right to retain it until the case was disposed of.

---

[5] Creath's Ad. *vs.* Sims.   [6] Prout *vs.* Lennox.   [7] Smith *vs.* M'Iver.

Is that not a sufficient reason for this Court to hold up the injunction until the other case has been disposed of, or at least until this defendant has done everything in his power to bring it to a final action? The above was concurred in by the Chief Justice, W. Cranch.