PEARL HARTT,

*Plaintiff and Appellant,*

vs.

CLARENCE A. BRIMMER and ROBERT BIBLE, Executors of the Estate of John K. Hartt, Deceased; Clarence A. Brimmer and Robert Bible, as designated Trustees under the Last Will and Testament of John K. Hartt, Deceased; Pearl Holmquist; Marie Harrison; Frances Louise Mitchell; Catherine Keffeler; Dorothy Okey; and Marjorie Higley,

*Defendants and Respondents.*

(No. 2681; September 13th, 1955; 287 Pac. (2d) 645)

For the plaintiff and appellant the cause was submitted upon the brief of Pence & Millett of Laramie, Wyoming, and Senior & Senior of Salt Lake City, Utah, and oral argument by Mr. Francis M. Gibbons of the firm of Senior & Senior and Mr. Alfred M. Pence.

For the defendants and respondents the cause was submitted upon the brief of Clarence A. Brimmer, Jr., of Rawlins, Wyoming, and Lathrop & Lathrop of Cheyenne, Wyoming, and Smith & Nicholas of Lander, Wyoming, and oral argument by Mr. Carleton A. Lathrop and Mr. Clarence A. Brimmer, Jr.

360

## OPINION

BLUME, Justice

This is an action in equity brought by the widow of John K. Hartt, deceased, to set aside an order of the probate court of Carbon county, Wyoming, admitting to probate the last will and testament of John K. Hartt, deceased. The petition was filed on March 10, 1954. In view of the important bearing of the allegations in the petition herein, it is deemed advisable to set it out in full. The petition, together with the prayer therein, is as follows:

COMES NOW Plaintiff by and through her attorneys, Pence and Millett of Laramie, Wyoming, and Senior and Senior of Salt Lake City, Utah, and for her cause of action against the Defendants, alleges the following facts:

"1.   John K. Hartt died on or about July 14, 1952

leaving an estate in Carbon County, Wyoming consisting of real and personal property. Said decedent left a Last Will and Testament dated March 14, 1951 which named Clarence A. Brimmer and Robert Bible as Executors thereof.

"2. On July 18, 1952, said Clarence A. Brimmer and Robert Bible signed and filed, in the District Court of the County of Carbon, their Petition for probate of said Will. This Petition, which was prepared on a printed probate form, prayed that the Clerk of said Court appoint a time for proving the Will of said decedent, and that the Clerk cause notice to be given of said hearing by publication in some newspaper printed and published in this county. The following words, to-wit: 'and that citation be directed to be issued and served upon said heir—of said testat—residing in this county' which were included in the prayer of said printed form of Petition for Probate of Will, were deleted by the Petitioners, Clarence A. Brimmer and Robert A. Bible.

"3. Notice to heirs required by Wyoming Probate Code 6-209 was never mailed to the heirs of the decedent resident in the state although the names and residences of all the heirs of decedent were contained in the said Petition for Probate of Will.

"4. The Petition for Probate of Will came on for hearing before this court on August 21, 1952. Upon representations made by Petitioners Clarence A. Brimmer and Robert Bible as to notice, the court entered its order admitting the Will to probate and, among other things, found that due proof of notice 'has been duly given of the time appointed for proving said Will and for hearing said Petition, according to law.'

"5. Petitioner did not receive the statutory notice of the hearing of the Petition for Probate of said Will required to be given by Section 6-209 W.C.S., 1945. Neither did Petitioner receive notice of the hearing of said Petition for Probate of said Will from any other source and Petitioner was deprived of the opportunity to appear and to be heard at the hearing on said Petition for Probate of the Last Will and Testament of John K. Hart, deceased.

"6. There is in the probate file for the Estate of said decedent an instrument captioned 'Waiver of Notice' bearing date of July 18, 1952 and marked filed in this court on August 21, 1952. This instrument contains the signature of your Petitioner, as well as the signatures of Marie Harrison, Marjorie Higley, Frances Louise Mitchell, Catherine Keffeler and Dorothy Hartt. The instrument contains a blank space for the signature of Pearl Holmquist, who never signed it.

"Said Waiver of Notice contained the following statement:

" 'We the undersigned * * * sole heirs at law, legatees and devisees of the said John K. Hartt, deceased, each for herself does hereby enter a general appearance in the above entitled cause and proceeding waiving all notice of any kind or notice whatsoever, of the hearing upon application for the probate of the Will of the said decedent as presented the above court by petition of Robert Bible and Clarence A. Brimmer filed the 18th day of July, 1952, and of the issuance of Letters Testamentary to the said Robert Bible and Clarence A. Brimmer, hereby expressly consenting and requesting that said Will be admitted to probate as the Last Will and Testament of the said decedent, and that Letters Testamentary issue to the said Robert Bible and Clarence A. Brimmer as prayed.'

"This purported waiver appears to have been signed by your Petitioner.

"7. Petitioner does not remember signing the purported waiver above referred to, but is informed that she signed it on July 16, 1952, the night of decedent's funeral. At that time, Petitioner was under sedatives administered by a physician which became necessary because of the heavy mental and physical strain placed on Petitioner as a result of the death of her husband. Plaintiff was not in a condition to understand the nature or significance of her act of signing the purported waiver on July 16, 1952.

"8. The probate file in the matter of the Estate of John K. Hartt, deceased, contains two instruments captioned 'Testimony of Subscribing Witness on Pro-

bate of Will', one signed by James Engstrom and the other by George Hutt.

"Both instruments recite that the signer thereof 'knew John K. Hartt on the 14th day of March 1951, the date of the instrument now shown to me, marked as filed in this Court on the 18th day of June 1952, purporting to be the Last Will and Testament of the said decedent.' "The Last Will and Testament of John K. Hartt, which appears on file herein, is dated March 14, 1951. However, said John K. Hartt did not die until July 14, 1952 and his Last Will and Testament was not filed until July 18, 1952. Yet, the testimony of the subscribing witnesses is to the effect that the Will which they identified and proved was one filed in this Court on June 18, 1952.

"WHEREFORE, Petitioner prays that:

"1. This court sitting as a court of equity revoke the probate of the Last Will and Testament of John K. Hartt, deceased, on the ground that the Will admitted to probate as the Last Will and Testament of said decedent has not been proved in the manner required by law.

"2. This court sitting as a court of equity revoke the probate of the Last Will and Testament of John K. Hartt, deceased, on the additional ground that Petitioner was not given the statutory or other notice of the hearing of the Petition for admitting said Will to probate, and did not have the opportunity to appear and be heard at said hearing.

"3. The Letters Testamentary heretofore issued to said Clarence A. Brimmer and Robert Bible be revoked.

"4. And for such other and further relief as the court may deem equitable and proper in the premises."

The executors herein filed a motion to dismiss the petition on the ground that the court has no jurisdiction; that the action herein is barred under the statutes and by laches; that the order admitting the will to probate cannot be attacked by this collateral proceeding

and that the order made is conclusive. The respondent Marjorie Higley filed a demurrer on the ground that the court has no jurisdiction in the case; that the petition does not state facts sufficient to constitute a cause of action. The court sustained both the motion to dismiss as well as the demurrer and dismissed the action. From that judgment, the plaintiff has appealed to this court by direct appeal. She will hereinafter be mentioned as plaintiff or appellant or both. The defendants will be referred to as such or as respondents or by appropriate designation.

Plaintiff and appellant seeks to set aside the order admitting the will in question to probate because of the fact that the notice was not mailed to her as provided by Section 6-209, Wyoming Compiled Statutes 1945. It is not alleged that notice was not published as required by Section 6-208, W.C.S. 1945, so we must assume that such notice was duly published. Section 6-209, W.C.S. 1945, provides that a copy of the notice must be sent to the heirs of the decedent resident of this state. Personal service, however, is sufficient and so would be a waiver of notice. 1 Bancroft's Probate Practice, 2d Ed., § 58. The waiver appears to be signed by the plaintiff and appellant. She does not allege that she did not sign it, but simply that she does not remember signing it. We think we must, in view of the court's order, assume that she actually signed it. The executors, or other persons on their behalf, then actually tried to comply as literally as possible with the provisions of Section 6-209, W.C.S. 1945, and did actually so comply with it. Plaintiff and appellant does not allege the party obtaining her signature committed any fraud or knew that there was any defect in her signature or the process of obtaining it. Nor does she allege that she had no knowledge of the proceedings for probating the will of decedent long before the petition herein was filed. But now more than a year and a half

after the will was admitted to probate she comes in and says she did not know the significance of what she was signing because she was under a sedative, not alleging that anyone else, including the court, knew anything about the fact. It is said in 1 Bancroft's Probate Practice, 2d Ed., § 298, 299; "If, without fraud on the part of the proponent, the heirs enter a personal appearance and expressly consent in writing to the admission of the instrument to probate as the last will and testament of the decedent, the probate court has jurisdiction of their persons." If we take this statement literally, it follows, of course, that the judgment of the trial court was correct. We shall not, however, base our conclusion on this statement, though we shall take it into consideration.

Before proceeding any further we should mention the fact that we have held, though under facts somewhat different, that such notice is not jurisdictional. In re Lane's Estate, 50 Wyo. 119, 58 P.2d 415, and cases cited. There are, it is true, authorities to the contrary. The question was discussed at length in In re Towndrow's Will, 47 N.M. 173, 138 P.2d 1001, in which notice was given by publication but no personal service was had as required by statute. The court held that such personal service was not jurisdictional and that the decree admitting the will to probate could not be attacked collaterally. We think we should adhere to the rule heretofore announced by us. It is more consonant with the common law rule at which a will probated ex parte and without any notice to the heirs was a valid order. In re Towndrow's Will, supra. It is also more consonant when we consider the other facts. An heir of a decedent living, say in Colorado, who receives no personal notice, but the only notice given to him is that by publication, is absolutely bound by the order admitting the will to probate and he cannot after the expiration of six months attack the probate of the will

even though he knows nothing of the death of the decedent or the probate of the will. § 6-414, W.C.S., 1945. Yet counsel for plaintiff would have us believe that when an heir of the decedent lives in this state, and the notice upon him or her is in any way defective—assuming that there was some defect—he or she can wait a year and a half or longer before making that defect known to the court and attack the probate of the will notwithstanding the lapse of time, even though he or she knows of the proceeding for probating the will or is charged with knowledge thereof. The proceeding for admitting the will to probate is in rem. The court, as stated in the petition herein, recited that due notice had been given to the parties. It then had jurisdiction in the case and its decree cannot be attacked collaterally. In re Towndrow's Will, supra; In re Lane's Estate, supra. The situation here presents at most a defect or irregularity in the service of the requisite notice.

We should also, before proceeding to the discussion of the main contention herein, refer to the fact that counsel for plaintiff contend that the will was not shown to be the last testament of the decedent because the witnesses referred to the fact that the will was filed in court on June 18, 1952, instead of July 18, 1952. The basis of this contention is rather weak. The will was dated March 14, 1951. The witnesses who gave testimony referred to the will as dated on March 14, 1951, "the date of the instrument shown to me." That was sufficient identification and shows that the mention of "June" instead of "July" was purely a clerical error. The court doubtless found that to be true and its judgment is presumed to be correct. The instant contention is overruled.

Counsel for the respondents contend that the action

herein is barred by reason of our statutes. These statutes are as follows:

§ 6-408. "After a will has been admitted to probate, any person interested may, at any time within six (6) months after such probate, contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked."

§ 6-411. "In all cases of petitions to revoke the probate of a will, wherein the original probate was granted without a contest, or written demand of either party, filed as required by law in civil actions, a trial by jury must be had, as in case of the contest of an original petition to admit a will to probate. If, upon hearing the proofs of the parties, the jury shall find, or, if no jury is had, the court shall decide that the will is for any reason invalid or that it is not sufficiently proved to be the last will of the testator, the probate must be annulled and revoked."

§ 6-414. "If no person, within six (6) months after the admission to probate of a will, contest the same or the validity thereof, the probate of the will is conclusive."

These statutes on their face relate only to contest of the will or the validity thereof. And if the questions raised herein could have been raised in such a contest, there can be no doubt that the action herein would be barred. Tracy v. Muir, 151 Cal. 363, 90 P. 832; Nicholson v. Leatham, 28 Cal. App. 597, 153 P. 965, 155 P. 98, and a number of other cases cited. That is true even in cases in which a will is admitted to probate ex parte and without notice to heirs. Dunn v. Bradley, 175 Ark. 182, 299 S.W. 370, 373, 374; Weese v. Weese, CC 757, 134 W. Vo. 233, 58 S.E. 2d 801. But may the question raised herein be raised in such a contest? An attack on the order of probate because of defect in the procedure, while related, is distinct from a contest of

a will in which, though incidentally seeking to set the order of probate aside, the will itself, or the validity thereof, is attacked. That is not sought in this case. It is stated again and again that a court of equity cannot set aside the order admitting a will to probate since the probate of a will is a matter exclusively within the jurisdiction of the probate court. Caldwell v. Taylor, 218 Cal. 417, 23 P.2d 758, 88 A.L.R. 1194; Case of Broderick's Will, 21 Wall. 503, 22 L.Ed. 599; 2 Page on Wills, 3d Ed., § 577, p. 92. In 3 Freeman on Judgments, 5th Ed. § 1185, the author states: "Notwith standing the scope of equity jurisdiction in case of most other orders and decrees of probate courts, it seems to be well settled that a decree with respect to the probate of a will cannot be set aside in a court of equity on any grounds. Certainly, so far as concerns any matters which were or might have been urged to establish or defeat the probate, the decree is conclusive and bars re-examination elsewhere: And there is much in the opinions in this class of cases leading to the conclusion that under no circumstances can any relief be had in equity from a decree probating or denying probate of a will." Numberless cases are cited. The statement appears so inclusive that on its face there would seem to be left no doubt that no relief can be had by the plaintiff and appellant herein. Still an examination of these cases, including the relevant cases cited by counsel for the executors, discloses so far as we have found that the attack in those cases was made on the will itself and the validity thereof. These cases, therefore, are not directly in point herein, although they seem to clearly indicate that courts of equity should not interfere in probate matters unless it be in exceptional cases and also seem to indicate a policy—a matter discussed later. It is stated in 68 C.J.S. 670, p. 927: "In the absence of statute conferring a wider jurisdiction on courts of probate, the only question properly

involved in the contest of a will is whether the instrument produced is the will of the testator; and the functions of the court are exhausted when that question is decided." It is further held that: "Neither is the question of the regularity and validity of the order of probate, nor the jurisdiction of the court to make such order, in issue or involved" in a contest of a will. 68 C. J. 927, 928, and cases cited; In re Dole's Estate, 147 Cal. 188, 81 P. 534. It is that very regularity and validity of the probate herein which plaintiff contests. Her attack is solely directed against that, so when the order is vacated for invalidity, she may then take whatever steps she deems advisable without the petition herein indicating what those steps may be. We shall examine that direct contention to determine its merits under the circumstances herein. We may incidentally mention the fact, as pointed out by counsel for the executors, that the petition does not allege that plaintiff would in any way have changed her position if the matter complained of had not occurred, or that she has in any way been harmed by reason thereof. Ordinarily it is essential for one seeking to vacate a judgment to assert that he has sustained a loss, that a judgment entered injured him and that a retrial will result in a judgment different from that sought to be vacated. Courts will not engage in vain and idle action to disturb a judgment. 49 C.J.S. 536, 537, 467; 30 C.J.S. 333; 67 C.J.S. 899; 39 Am. Jur. 860; Heidbreder v. Superior Ice & Cold Storage Co., 184 Mo. 456, 83 S.W. 469; Murrell v. City of Sapulpa, 148 Okla. 16, 297 P. 241, 248; Massachusetts Benefit Life Assn. v. Lohmiller, 74 F. 23, 2 Page on Wills, 3rd Ed. § 678. None of these factors are alleged in the petition before us. Plaintiff merely asks that the judgment of the probate court be vacated so that she can then do what she pleases. We have some doubt as to whether such a petition is sufficient, but we shall not decide the point. If a party ap-

pears in court before judgment and asks that a defective notice be suppressed, the prayer can doubtless be granted without showing any of the facts above mentioned. But when a judgment has once been entered on a defective notice, the situation becomes different.

Counsel for plaintiff evidently take the position that temporary aberration of the mind, caused by sedatives, vitiated her waiver of notice, of which she could take advantage at any time and that it was not her duty to apprise the court promptly after learning of what she had done and may do so 19 months after the will was probated even though the court, the executors and the party obtaining her signature knew nothing of that temporary aberration of the mind. Counsel have not cited us to any authority to that effect and we think the law is to the contrary when defect in the notice is not jurisdictional. It is stated in 72 C.J.S. § 113, p. 1167: "Independent of any statute, objections to defects in process or service should be made as early as possible or in the first instance, and the failure to interpose a timely objection may preclude the assertion of the defect on the theory of waiver, estoppel, or laches, as discussed infra subdivision b and c of this section." And in 72 C.J.S. § 113, p. 1170, it is stated: "As a general rule, unnecessary or unexcused delay or laches will deprive defendant of the right to urge formal objections to process, service, or return, and, where formally defective process is personally served, or where personal service is improperly made, and defendant makes no appearance and enters no objection to it but lets the cause proceed, he will not be permitted to object at a subsequent term, but will be deemed to have lost his right to attack the defect by his silence." The term at which the order of probate was admitted ended with the second Monday in October 1952, so that the plaintiff had from July 16, 1952, until the second Monday in October of that year to appear and make her

objections to the notice known to the court and, while she alleged that she was in no condition to know she had signed a waiver of notice, she had three months in which to find out, and was chargeable with knowledge as hereafter stated, that she in fact did sign it and still failed to appear and tell the court about it.

We come now to the direct question before us as to the relief which the plaintiff seeks in equity. While equity occupies a large field of the law, the field is not unlimited. It is stated in 49 C.J.S. § 341, p. 691, that: "A bill attacking a judgment is not regarded with favor by the courts, and will lie only in exceptional cases. Such relief may be had, not of right, but in the exercise of a sound legal discretion." In the note are cited cases holding that: "Equitable proceedings to set aside a final judgment after the term are jealously watched, and granted only in extreme and restricted cases." Compare that to the bald claim of counsel for plaintiff that merely because the time of contest of the will is passed, therefore she has a remedy in equity. The bearing that defective service of process has in an action of equity is considered in 49 C.J.S. 711, where it is stated that equitable relief will be denied if the service is merely irregular, and we take it that defective service such as is claimed in this case stands on no different footing from service of process by an officer of the court. It is stated in Stewart v. Byrne, Tex. Com. App., 42 S.W. 2d 234, 235, 236: "A court of equity will not interfere to set aside a judgment and grant a new trial, except upon a showing of strict diligence in the presentation of the cause and upon proof that, after doing all that such diligence required to be done, he has been deprived by fraud, accident, mistake, or other uncontrollable circumstances, of properly presenting his case upon the trial. And if, after it has become apparent that he must fail in his suit, he fails to avail himself of all means at his disposal to arrest the judg-

ment and to exhaust every legal remedy to vacate it after it has been rendered, relief will be denied. That the complainant has a meritorious case, and that he has been compelled to suffer an adverse judgment by circumstances wholly beyond his control, are the fundamental grounds upon which the equity to demand a new trial must rest. Brownson v. Reynolds, 77 Tex. 254, 13 S.W. 986." In Massachusetts Benefit Life Assn. v. Lohmiller, 74 F. 23, 27, 28, the plaintiff brought an action in equity after the term at which a judgment had been rendered complaining of defective service. The court denied relief stating in part: "In light of these authorities, if it be conceded that the complainant was not properly served, and that the judgment was voidable, or even void, that condition is not of itself sufficient to warrant interference; but an equity must be presented, aside from that bare circumstance, showing that the injured party was without knowledge, was taken by surprise, and had no opportunity, in fact, to obtain a hearing. So far as appears from the allegation of this bill, the complainant may have possessed full and timely information of all the proceedings, but refrained from making any motion, relying upon the assumed defect, and if such were the fact the remedies are legal only. Neglect of the opportunity which was then open for a hearing would bar equitable relief. 'Whenever a competent remedy or defense shall have existed at law, the party who may have neglected to use it will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice.' Creath's Adm'rs v. Sims, 5 How. 192, 204. No presumption can be indulged of the want of knowledge, and the manifest evasions here, and the uncontroverted fact that service was made upon an actual agent, would lead strongly to the contrary presumption of fact. If the complainant had no such knowledge or opportunity,

the bill should so allege, and, failing therein, presents no ground for an injunction. * * * (Quoting from Ableman v. Roth, 12 Wis. 81) 'Courts of equity will not interfere to grant a new trial where no substantial right has been lost, and no unfair advantages gained, simply because, by some trick or artifice, a judgment which is just and equitable in itself has been obtained in advance of the time when it would otherwise have been rendered.' "

In 3 Freeman on Judgments, 5th Ed., § 1216, p. 2526, the author states: "It has already been intimated that neither an erroneous conclusion upon which a judgment was based, nor any irregularity of proceeding not involving the jurisdiction of the tribunal pronouncing it, can have any effect in determining the question whether the judgment should be set aside or restrained in equity. Such, beyond doubt, is the law." And in § 1217a, the author states that "it is clear that courts of equity will not exercise any supervisory authority over the mere mode of proceedings in other tribunals, and hence will never enjoin a judgment on the ground of any mere irregularity, unless of so serious a character as to prove that the court pronouncing the judgment against which relief is sought was without jurisdiction." See also 49 C.J.S. 714, and Miller v. Hagie, 59 Wyo. 383, 140 P.2d 746. In the annotation on direct and collateral attack on a judgment contained in L.R.A. 1918D, 470 to 476, the author stated that "all the courts hold that an equity court cannot review mere errors as an appellate court could do, or set aside the judgment for mere irregularities, and they also seem to hold that such action can be maintained if the demand for relief is based on lack of jurisdiction, fraud, or other recognized ground for equitable relief."

In the case at bar, the court, as already shown, had jurisdiction to proceed. We have quoted from Freeman,

supra, merely to show that equity does not look with a great deal of favor upon attacking a judgment for mere irregularity, and that the case before us is by no means so clear a case as to necessitate the interference of equity.

There is nothing in the petition of plaintiff to show how long the temporary aberration of mind caused by a sedative lasted. The statement that "petitioner was deprived of the opportunity to appear and to be heard at the hearing on said petition of probate of the last will and testament of John K. Hartt, deceased" is purely a conclusion. In the absence of an allegation to the contrary we cannot assume that the temporary aberration lasted more than a few days. Plaintiff knew of the death of the decedent. She was chargeable with knowledge of the fact that the property of the decedent must be administered by the probate court, and hence that the decedent had made a will. Nicholson v. Leatham, 28 Cal. App. 597, 153 P. 965. As stated in Case of Broderick's Will, supra: "The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem." Plaintiff had from July 16, 1952, to August 21, 1952, when the will was admitted to probate to inform herself of the status of the probate proceedings, and to inform the court of the temporary aberration of mind mentioned. She had ample time to do so. Even if that is not true, she had ample opportunity to do so during the same term of court which lasted until the following October.

It is not necessary, however, to decide that the attack on a judgment or order, such as in the case at bar, is necessarily limited to the time above mentioned. Let us say that excusable facts and circumstances may

exist which would justify the attack at a later time. The petition herein does not allege any such excusable facts or circumstances. Counsel for plaintiff say that it is not necessary; that laches is a matter of defense and cannot be raised by demurrer or motion to dismiss (See 30 C.J.S. 681, 711) ; that the estate has not yet been closed and respondents are not prejudiced as mentioned in some of our own cases. However, the petition shows the lapse of a long time, 19 months, after the order admitting the will to probate was entered, and on the face of the petition shows neglect—apparently the main factors to be considered as already mentioned. See 3 Freeman on Judgments § 1192. In 49 C.J.S. § 379, p. 754, it is stated that: "It is generally sufficient *and necessary* for the party seeking relief to show due diligence and file the suit within a reasonable time." (Italics supplied.) That would seem to be applicable specially in a case involving a mere irregularity. Moreover we do not have before us an ordinary case of laches. In the first place, as already heretofore fully shown, courts of equity will not ordinarily interfere in cases involving the admission of a will to probate. In the second place we have before us an estate of a decedent—a matter in rem. The statute requires that the administration of the estate must be commenced promptly, and almost immediately after the death of the decedent. It is then not unreasonable to hold that the various steps in that administration should abide by the same rule, except in so far as the statute directs otherwise. In fact we have before us a matter of special public policy. It is stated in Perrin v. Praeger, 154 Md. 541, 140 A. 850, that the testamentary system contemplates and requires prompt settlement of estates of decedents. In McVeigh v. Fetterman, 95 Ohio St. 292, 116 N.E. 518, 520, the court states:

"We may well adopt and apply here the language used

by Justice Bradley in Case of Broderick's Will, 21 Wall. 503, 22 L.Ed. 599:

" 'The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; * * * and that the result attained should be firm and perpetual.'

"This policy of facilitating the settlement of estates has been clearly manifested by legislative enactment in this state, and the statutes upon that subject should, in so far as possible, be so construed as to further that policy and fully accomplish the obvious purpose of their enactment."

In State of California v. McGlynn, 20 Cal. 233, 272, 81 Am. Dec. 118, the court states in reference to probate proceedings: "These provisions of our statute are but the embodiment of the principles of law which have been settled by the decisions of the Courts in England and the United States as being the most expedient and just, having regard to the rights of persons claiming the estate of a deceased owner, and the requirements of society that the title of property should, as soon as practicable, be made certain and withdrawn from the arena of litigation." That policy is clearly manifest in our statutes. It is shown, not merely by the fact that wills must be contested within a limited time, but also by the very fact that while formerly the period for contesting a will was fixed at one year, the legislature reduced the period to six months. § 6-414, W.C.S. 1945. The period has also been reduced in other states, as in California. These contests may embrace fraud, forgery, and the like as in Case of Broderick's Will, supra, but these controversies must be setttled within the time fixed by statute for contesting a will. See Annotation, 52 A.L.R. 770; 2 Page on Wills, 3d Ed. § 674. When serious controversies like that must ordinarily under our statute be settled in a proceeding commenced within six months after the will was admitted to pro-

bate, it would be extremely anomalous to hold that controversies involving mere irregularities may be deferred for a period of 19 months, as in the case at bar. Particularly is that true when in some of the states wills may be admitted to probate ex parte, making notice of the proceeding of no importance at all. We should not be asked to be so inconsistent. We find no grounds for holding that the trial court abused its discretion in dismissing the action.

The authorities are divided on the question as to whether an action in equity to set aside a judgment or an order is a direct or a collateral attack. 31 Am. Jur. § 614, p. 206. The author of the Annotation in L.R.A. 1918D 470 seems inclined to the view that it is a direct attack. See Poston v. Delfelder, 39 Wyo. 163, 270 P. 1068, 273 P. 176, on rehearing. We need not decide the point. We think it makes no difference which view is taken so far as this case is concerned. The probate proceedings involved were proceedings in rem. The court had jurisdiction to enter the order admitting the will to probate. There was at most a defect or irregularity in the process. As we have seen, courts of equity are, to say the least, ordinarily hesitant to set aside a judgment for mere irregularity in the process (See also 34 C.J.S. 447, 448, note 82), and will not do so if the attack thereon is not made promptly and so belatedly as in the case at bar. The effect is the same as though the attack were collateral. See Poston v. Delfelder, supra, on rehearing. We do not say what should be the rule if a case of real hardship should be presented. We have no such case before us. We think the result herein should be the same even if we do not consider the probate court to be distinct from the district court.

The judgment of the trial court is affirmed.

*Affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.