SAUERHERING VS. THE IRON RIDGE AND MAYVILLE
RAILROAD COMPANY AND OTHERS.

EQUITY — INJUNCTION: *Grounds on which town bonds will be canceled — Rights of* de facto *officers of private corporation.*

NOTICE: *Posting notice in "most public" places; discretion of officer.*

1. A tax-payer of a town that has issued its bonds for the stock of a railroad company, cannot have them declared void, or their delivery to *de facto* officers of the company restrained, on the ground that such officers were not legally elected.

2. Where a statute requires notice of a town meeting to be posted in "three of the *most public* places in the town," if they were posted in three public places, the officer charged with the duty acting fairly according to his best judgment, the court will not inquire whether the places selected were in fact the *most* public.

3. An averment, therefore, that the notice "was not posted at three of the most public places, but only at one of such places," is insufficient.

4. Equity will not cancel the bonds of a town, at the instance of a taxpayer, for a mere technical irregularity in calling the town meeting which directed their issue, but will leave the parties to their legal rights.

APPEAL from the Circuit Court for *Dodge* County.

By the first section of an act, approved March 3, 1869, published on the 17th of the same month, and now appearing as chapter 165, Pr. & L. Laws of 1869, Robert Sauerhering, Diedrich Naber, Jr., Irving M. Reau, John Herring, James Sconlar, C. Krœsing, Jr., S. U. Lamoreaux, J. H. Andrae, Charles Ruderbusch and Charles E. Goodwin, together with other persons who should become stockholders under the provisions of the act, were incorporated under the name of "*The Iron Ridge and Mayville Railroad Company*," with the usual powers of such corporations. By the second section the persons above named were constituted the first directors of said company, to hold their offices until other directors should be elected by the stockholders. Section 4 authorizes the supervisors of the town of Williamstown, in Dodge county, "to subscribe any amount not exceeding $20,000, to the capital stock of said railroad company, and in payment thereof to execute and deliver to said company the coupon bonds of said town, due and payable at any time within ten years, at the option of said town," and that the coupons attached to the bonds "shall be receivable, at and after the maturity thereof, in payment of any town taxes levied upon property within said town." Section 5 directs the bonds to be signed by the chairman of the board of supervisors of said town, and countersigned by the clerk, and made payable to bearer, and declares

that they shall be "negotiable under the law merchant." Section 6 provides that "no such bonds shall be exe- cuted or delivered until after the supervisors of said town shall have passed and recorded in the books of said town a resolution to subscribe to the capital stock of said company an amount to be named in such resolu- tion, nor until, after the passage of such resolution and the recording thereof, at an annual or special town meet- ing, a majority of the qualified electors at any such election shall vote in favor of issuing such bonds." By section 7, so much of chapter 437, Pr. & L. Laws of 1865, as did not conflict with this act, was revived; and by section 8 it was declared that this act should take effect after its publication.

The third section of the act of 1865, thus revived, provided that the directors therein named should cause books to be opened at such time and place as they might designate, to receive subscriptions to the capital stock of said company,  *  *  *  giving at least ten days' notice of such time and place, by publishing the same in some newspaper published and printed in Dodge county, and should require ten dollars on each share of stock subscribed, to be paid at the time of subscribing; that said subscription book should remain open for receiving subscriptions for twenty days, and should then be closed until after the election of directors by the stock- holders; that the directors should then immediately give notice of an election by the stockholders of seven directors, at some time and place to be designated by them, which notice should be published in some news- paper printed in Dodge county, at least ten days prior to the time designated for such election; and that the directors thus elected should hold their offices until the next annual meeting of stockholders, etc.  The fourth section provides for an annual election by the stock- holders, by ballot, of a board of directors, who are required to be stockholders; and it directs the same

notice to be given of such election as is required for the first election above described. The fifth section provides that the board of directors shall appoint one of their own number president, and one vice-president, and may appoint a secretary, treasurer, attorney, etc., and may demand adequate security for the discharge of their respective duties, etc. The sixth section provides that all shares of stock in the company, owned by any person, shall be deemed personal property, and certificates for the same shall be issued, etc.

The complaint in this action (which was commenced in June, 1869), alleges, that the *Iron Ridge and Mayville Railroad Company*, defendant, is a corporation duly created by the laws of this state, and organized under an act of the legislature, entitled, etc. ; that the *Town of Williamstown*, defendant, is a municipal corporation, etc. ; that plaintiff (*Adolph Sauerhering*), at the time of the issuing of the bonds hereinafter mentioned, was, and ever since has been, and is now, a resident of said town of Williamstown, and one of the tax-payers therein, having considerable real and personal property liable to taxation in said town ; that on the 3d of March, 1869, a law was passed by the legislature of this state, entitled, etc., by which said town, under certain conditions and regulations, was authorized to subscribe an amount, not exceeding $20,000, to the capital stock of the said railroad company, and issue its bonds for such amount ; that, as plaintiff is informed and believes, said law has not yet been published, and is, therefore, not yet in force ;* that, nevertheless, the supervisors of said town, on the tenth of March, 1869, passed a resolution to subscribe $12,000 for said town to the capital stock of said company, which resolution was afterward, at a special meeting of the qualified electors of said town,

---

* The court, however, took judicial notice that the act was published, in fact, on the 17th of March, 1869.—REP.

held on the 27th of March, 1860, adopted by a majority of the electors then voting; that said special meeting was held without due notice, and that notice thereof was not posted at three of the most public places in said town, but only at one of such places; * that immediately after said meeting bonds to the amount of $12,000 were issued in the name of the town to said railroad company or bearer, purporting to have been made pursuant to said law of 1869, and were by the officers of said town, on behalf of the town, delivered to the defendant *Rudolph Sauerhering*, who then pretended, and still pretends, to be the treasurer of said railroad company, for and in behalf of said company, without any consideration whatever; that said railroad company did not, at the time of such delivery, issue any of its capital stock to said town, and has not yet issued any such stock, and intends never to do so; that on the 8th of April, 1869, the then directors of the company did, pursuant to notice, open books for the reception of subscriptions to the capital stock of the company; that the town of Williamstown was inserted in said books as the only subscriber to such stock, to the amount of $12,000; that within a few days (less than twenty) after said 8th of April, said books of subscription were closed; that no person or body corporate, except said town of Williamstown, has subscribed to said capital stock; that on the 15th of April, 1869, at the village of Mayville, in said town, a pretended election was made of directors and other officers, of said railroad company; that no notice whatever was given of such election; that every person

---

* R. S., ch. 15, sec. 16, provides, that special town meetings may be held for the transaction of any lawful business, "on a request being made to the clerk of the town, in writing, signed by twelve qualified voters of the town, specifying in such request the purposes for which such meeting is to be held." Section 17 provides, that the town clerk with whom such request is left "shall record the same, and immediately cause notices to be posted up in three of the most public places in the town, giving not less than fifteen nor more than twenty days' notice of such meeting."

who would do so was allowed to vote at such election; that no one of those who voted thereat was a stockholder in the company, or entitled to vote at the election of its officers; that the vote was taken *viva voce*, and no ballots were cast; that the crowd present took upon themselves, at the same time and place, to elect not only new directors, but also other officers of said company, and to determine who of the directors should be president, and who vice-president; that certain persons named were thus, at said pretended election, chosen to be president, vice-president, directors, secretary and attorney, and the defendant *Rudolph Sauerhering* to be treasurer of said company; that neither said *Rudolph Sauerhering* nor any of the other pretended officers of the company had given any bond or other security as such officers; that none of them is or ever was a stockholder in said company, or competent to hold the office which he claims to hold; that said pretended officers intend that no stock shall ever be issued to said town for said bonds; that said pretended election, and all that said pretended officers have done in regard to this matter, before and after such election, is intended by them as a swindle upon the tax-payers of the town; that, as plaintiff is informed and believes, said *Rudolph Sauerhering*, who, in his pretended capacity of treasurer of said company, received from said town the $12,000 in bonds, has still in his hands $6,500 of such bonds, which he claims to hold as such treasurer for said company; that the remainder of said bonds, in certain specified amounts, are in the possession of three other persons, who are named and made defendants; and that, as plaintiff is informed and believes, each of said three defendants last named had full knowledge and notice of all the facts set forth in this complaint before he bought any of said bonds. Plaintiff therefore demands judgment declaring said bonds null and void; restraining defendants from selling, transferring or in any

other way disposing of any of them; and requiring them to be delivered up and canceled.

The defendants demurred to the complaint as not stating a cause of action. The court sustained the demurrer, and rendered judgment for the defendant, from which plaintiff appealed.

*L. T. Fribert* (with *A. Scott Sloan*, of counsel), for appellant:

I. The validity of the bonds is contested on the grounds (1), that no resolution was passed by the supervisors, *after* the act of 1869 took effect, for a subscription to the capital stock of the railroad company. (2) That there was no sufficient legal notice of the special town meeting which voted to subscribe for such stock — the law requiring *fifteen* days' notice of such a meeting, and only *ten* days having intervened between the publication of the law and the holding of said meeting. (3) That the notice of the meeting was not posted as required by law. (4) That there was no consideration for the bonds, the company not having issued any capital stock to the town, nor intending to issue any, and all that was done being designed as a swindle upon the tax-payers. (5) That the persons to whom the bonds were delivered were not officers of the company. The power to issue the bonds, on the part of the town officers, depended on a strict compliance with the conditions prescribed. *Veeder v. Town of Lima*, 19 Wis. 280, 291; *Myrick v. La Crosse*, 17 id. 442; *Kneeland v. Milwaukee*, 18 id. 411. 1. The town had no authority to subscribe to the capital stock of the company without an act expressly conferring it. 10 Wis. 195; 13 id. 37; 19 id. 280. The supervisors, therefore, had no power to pass a resolution to subscribe to such stock until the act of 1869 was in force. The resolution adopted by the supervisors on the 10th of March was therefore a nullity. It was the same as if it had never been passed. The law provided that such resolution should be recorded in the books of the town, and that

the electors could not vote upon it until it was so recorded. Every person dealing in the bonds had, therefore, actual or constructive notice that said resolution was passed before the law took effect. *Veeder v. Town of Lima*, 19 Wis. 280. The subsequent subscription for stock on behalf of the town, and issue of the bonds, was not a ratification of the resolution by the three supervisors; for the subscription might have been made by the chairman alone, and the bonds were signed by the chairman and countersigned by the town clerk. 2. Every notice of a special town meeting must specify the purpose for which it is held, and must be given at least fifteen days before the meeting. The law authorizing the town to vote upon the question of subscribing stock was not published more than ten days before the meeting. If a notice was given before that time, the electors knew that the object specified was one which they had no legal power to act upon. Until the law was published, the electors had nothing that amounted in law to a notice. *Bangs v. McIntosh*, 23 Barb. 591. And the absence of due notice in this respect was a public fact, of which every one dealing in the bonds would be required to take notice. 10 Wis. 136; 13 id. 432; 14 id. 378. 3. If notice of the meeting was not duly posted as required by law, the presumption is that a great part, perhaps the greater part, of the electors had no notice of it; and nothing done at the meeting can have any binding force on the town. This objection, however, would not be good against subsequent purchasers of the bonds in good faith. *Clark v. City of Janesville*, 10 Wis. 136, 166. 4. Not only is a consideration indispensable to support the validity of the bonds (*Whiting v. R. R. Co.*, *ante*, p. 167), but the precise consideration provided by the act of 1869. *Veeder v. Town of Lima*, 19 Wis. 280. That act authorizes the delivery of the bonds "in payment" for capital stock. The certificates of stock ought to have been exchanged for the bonds.

A mere right to demand such certificates is not equivalent to the certificates themselves. 5. But the complaint shows further that the town will never receive any consideration for the bonds. It states that the bonds were not delivered to the railroad company or its true and lawful officers, as appointed by section 2 of the act of 1869, but to a person falsely pretending to be the treasurer of the company, but having no right, or color of right, to the office. Accordingly, no consideration can ever be obtained for the bonds. It is expressly alleged that the company intends never to issue any stock to the town ; and that said pretended officers have the same intent. And the fact that the supervisors of the town have dealt in this matter with the persons pretending to be officers, but having no color of right, and not with the true directors of the company, could not make the former persons officers. *de facto* of the company.

II. As to the right to *equitable* relief, counsel argued, 1. That if for any of the reasons alleged the bonds were invalid as against the pretended treasurer of the company and the other defendants who purchased with knowledge of the facts, yet might be valid in the hands of innocent purchasers, then equity should interfere, as demanded, to prevent the transfer to such purchasers. 2. That even if the bonds would be held invalid as against all purchasers, still equitable relief should be granted. (*a*) The coupons are made receivable for town taxes, at maturity. The same set of town officers who delivered the bonds are to receive the taxes of the year, and it must be presumed that they will receive these worthless coupons, to the irreparable injury of the taxpayers. (*b*) For aught that appears in the complaint, the principal of all the bonds, or of a part of them, may be payable out of the taxes of 1869. The taxpayers who should be compelled by levy to pay a tax assessed for the payment of these bonds, would have no adequate redress. (*c*) It is not enough that there is

*some* remedy at law; equity will interpose where that remedy is not ample and complete. Story's Eq. §§ 703, 716, 717, 864, 872, 931, 932; *Niagara Int. Bridge Co. v. Railway*, 30 Barb. 212; 3 Daniell's Ch. Pl. 1747; *Lewis v. Fullarton*, 2 Beav. 6; *Campbell v. Scott*, 11 Sim. 31; *Barron v. Richard*, 8 Paige, 351; *Thompson v. R. R. Co.*, 3 Sandf. Ch. 625; *Martin v. Nutkin*, 2 P. Wms. 266; *Morris v. Coleman*, 18 Ves. 437. Equity will also interfere to prevent a multiplicity of suits. *Cobb v. Smith*, 16 Wis. 666; 1 Story's Eq. § 64, note K, and §§ 477, 488; 2 Story, § 925.

*E. P. Smith* and *S. W. Lamoreaux* (with *John W. Cary*, of counsel), for respondents:

1. If one tax-payer can maintain this action, each tax-payer in the town could bring an action for the same cause, and the litigation would be oppressive. *Doolittle v. Supervisors Broome Co.*, 18 N. Y. 155. The suit should at least be brought, by its terms, for the benefit of all persons in like circumstances who may choose to come in and avail themselves of its benefits. 2. Plaintiff does not show that his individual rights are yet invaded, or that when they are invaded he will not have an ample remedy at law. 18 N. Y. 155. *Non constat* but that the tax, if levied, might be collected from plaintiff's personal property; in which case his remedy at law would be perfect and undoubted. *Norton v. Supervisors Rock Co.*, 13 Wis. 611; *New York Life Ins. Co. v. Supervisors*, 4 Duer, 192; *Dodd v. Hartford*, 25 Conn. 232; *Van Cott v. Supervisors Mil. Co.*, 18 Wis. 249; *Wilson v. Mayor*, 4 E. D. Smith, 675; *Ch. & N. W. Railway Co. v. Ft. Howard*, 21 Wis. 44; *Hasbrouck v. Board of Health*, 3 Keyes, 480. 3. The supervisors had power to call a special meeting independent of the act of 1869; and the meeting having been legally called, it was competent for them, under this law, to vote upon making this subscription. 4. The majority of the electors at said meeting, and the town by the subsequent

subscription, waived any irregularity in the preliminary call for the meeting, and ratified the previous action of the town officers. *Veeder v. Town of Lima*, 19 Wis. 292.    5. The town became and is entitled to stock in the company to the amount of $12,000. A certificate of stock was not essential to its ownership. It is a mere evidence of title, which the owner may require at any time, and which the court would compel the corporation to deliver. *Spear v. Crawford*, 14 Wend. 20 ; A. & A. on Corp. 476 ; *Chester Glass Co. v. Dewey*, 16 Mass. 94 ; *Buffalo & New York R. R. v. Dudley*, 14 N. Y. 347 ; *Seymour v. Sturgess*, 26 id. 143 ; *Cole v. Ryan*, 52 Barb. 168.    6. The officers alleged to have been irregularly elected are officers *de facto*, and their acts are binding until they are removed by direct proceedings instituted for that purpose.    7. If the bonds are void for the reasons alleged in the complaint, they will remain void in the hands of all persons, and there is no need of the interference of equity. *Veeder v. Town of Lima*, 19 Wis. 280.

PAINE, J.   This suit was brought by the plaintiff, as a tax-payer of the town of Williamstown, in Dodge county, for the purpose of having certain bonds issued by the town, in aid of the defendant railroad company, declared void and canceled. The complaint was demurred to, and the demurrer sustained, and judgment entered for the defendants ; from which this appeal is taken.

The complaint contains a series of allegations designed to show the invalidity of the election of the acting officers of the railroad company. But it appears that they are at least officers *de facto ;* and the complaint alleges that the company is a corporation "duly created by the laws of this state, and organized under an act of the legislature," etc.   This being so, a tax-payer of a town that has issued bonds for the stock of the railroad company, can-

not, in this collateral way, raise any question as to the regularity or validity of the election of the officers of the company, for the purpose of preventing the bonds from being delivered to them.

The grounds of objection to the validity of the bonds consist of alleged irregularities, and neglect to comply with the requirements of the law authorizing them to be issued. The vote upon the subject was at a special meeting, and the law requires notice of such a meeting to be posted in "three of the most public places" in the town. It is alleged here that it "was not posted at three of the most public places in said town, but only at one of such places." But this cannot be construed as denying that the notices were posted in three public places. It was probably designed only to deny that the places where two of the notices were posted were as public as some others. But it is very questionable whether, in cases arising under such statutes, where it appears that the notices are posted in the proper number of public places, courts should go into any inquiry as to the comparative degrees of publicity between those places and others in the town, with a view to defeat the proceeding, if a preponderance of testimony should show that other places were more public. Statutory notices of elections are generally held to be directory. This court has held the same rule in respect to a special election to fill a vacancy. *State v. Orvis*, 20 Wis. 235. And although the same rule might not apply to the notice of a special town meeting, yet it would probably be held that the law intended to make the judgment of the officer, whose duty it was to post the notices, final as to the comparative publicity of different places in the town, in all cases where it appeared that he had acted fairly, according to his best judgment. And if this is the true rule, the pleading here is not sufficient to raise any objection to the validity of this special meeting.

The only other objection to the validity of the bonds, which deserves attention, grows out of the fact that a part of the preliminary proceedings required by chapter 165, Pr. & L. Laws of 1869, under which they were issued, were taken before that act was published. Within the decisions of this court, it was a public, and therefore a general, law, and not in force till published. And it appears that the resolution of the supervisors to subscribe to the stock, as required by section 6, was passed before the law was published, and the notice of the town meeting was also issued before such publication. The general law requires notices of special town meetings to state the purposes for which they are called. And consequently, when these notices were first issued and posted, the purpose of voting on the proposition to subscribe stock was, strictly speaking, not a legal purpose, inasmuch as the law authorizing it was not yet in force.

But the law was in force before the day of the meeting, and there is nothing in the complaint to show that the electors of the town had not full knowledge of the election, or that there was not a full and fair expression of their views in the ballots cast. The objection therefore, if good at all, is purely a technical one. And whatever effect it might have in a proceeding to enforce a tax title to real estate, in case of a sale for a tax voted at such a meeting, we think it is not of such a character as to justify the interposition of a court of equity to arrest the whole proceeding at the instance of a single taxpayer of the town. The principles acted on by this court in the case of *Stokes v. Knarr*, 11 Wis. 389, and in *Ableman v. Roth*, 12 Wis. 81, are applicable here. There should be some allegation impeaching the fairness and justice of the proceeding before a court of equity would so interpose.

*By the Court.* — The judgment is affirmed.