June Term, 1860.

ABLEMAN et al.
v.
ROTH et al.

---

ABLEMAN and another vs. ROTH and others.
SAME vs. FAIRCHILD and others.
SAME vs. O'GRANNIS and others.

A bill in equity, for the purpose of obtaining a new trial of an action at law, or enjoining the collection of the judgment therein, was properly dismissed by the court, where no evidence was produced, showing, or tending satisfactorily to show, that the complainants had a *good defense* to the action at law, or that the judgment was contrary to equity; although it appeared that the action at law was improperly brought to trial by the plaintiff therein, in violation of a known verbal agreement between the attorneys on both sides for its postponement, whereby the defendants, in such action, and their attorneys, were prevented from being present at the trial, or offering any evidence in support of their plea to such action.

As to the amount of proof which should be required, to show that injustice has been done by a judgment so obtained, the same rule should prevail in a proceeding in equity for a new trial merely, which prevails in a court of law.

APPEALS from the circuit court for *Milwaukee* county. These cases depended upon substantially the same state of facts, and were heard and decided together. The principal case was as follows: *Ableman* and *Cotton* filed a bill in equity, in February, 1857, against *Nelson Roth, Volkert W. Roth, S. S. Conover* and one *Donovan*, to enjoin proceedings upon executions, which had been issued upon a judgment in favor of the defendant, *Nelson Roth*, against the complainants. The bill states that on the 20th of December, 1855, *Nelson Roth*, sued the complainants in an action of trover, in the circuit court for Iowa county, to recover the value of certain watches, plate and jewelry, which the complainants, as marshal and deputy marshal of the United States, for

the district of Wisconsin, had taken, on an execution from the United States court of that district, upon a judgment against said *Volkert W. Roth;* that the property so taken was at the time of said levy, the property of said *Volkert W.,* and subject to said execution; that the same was duly sold by them for $1741,87, the amount of said execution, and was not, at the time, worth over $2,200; that the complainants had, therefore, a full and complete defense upon the merits to said action of trover, and that such defense was fully set up in their plea, and notice filed in said cause; that they had issued commissions to take the testimony of witnesses in the state of New York, to be used on the trial of said action, but the taking of one of said depositions having been delayed on account of the absence of the witness, so that it was doubtful whether it would be received in time for a trial of said action at the term of the Iowa circuit court, appointed to commence on the 15th day of September, 1856, it was on the 13th of that month, mutually agreed between A. R. R. Butler, Esq., of Milwaukee, an attorney of the complainants, in said action, and Thomas Hood, Esq., of Madison, the attorney of said *Nelson Roth,* that for the purpose of avoiding unnecessary expense and loss of time, and for the convenience of both parties, the said cause should remain in its then state, and that nothing should be done therein, until the said Thomas Hood should communicate with said Butler, at Milwaukee, and a time should be agreed upon, when the said Hood and Butler should go together to Mineral Point, in the county of Iowa, for the purpose of making some disposition of said cause; that it was further expressly agreed between said Butler and Hood, that said Butler need not, in any event, leave Milwaukee for Mineral Point, before Thursday, the 18th day of said month of September, and not then, unless notified by said Hood to do so, and that if said Butler should be so notified, then, and in no other event, the said Hood and Butler would go together to Mineral Point, to dispose of said cause by trial or otherwise; that said Butler received no communication from said Hood, in the premises, after the said 13th day of September, until Sunday the 21st day of that month, when he received

a letter from said Hood, informing him that said cause was tried on the 18th day of said month, and expressing regret and surprise that a trial had been had without his knowledge, and a judgment entered up therein.

The bill further states that *Volkert W. Roth* was interested in said judgment; that he was the agent and brother of the said *Nelson Roth;* that he was cognizant of said agreement between said Hood and Butler, and, in utter disregard thereof, went to Mineral Point and retained Samuel Crawford, Esq., to try said cause on the part of the plaintiff, and that on the said 18th day of September, the said *Volkert* being the only or principal witness for the plaintiff, and no attorney present on the part of the complainants, who were defendants therein, said action was tried in the absence of said defendants, and a judgment was entered against them in said action, for $5,019.38 in damages.

The bill further states, that said *Volkert W. Roth*, as the agent of said *Nelson Roth*, fraudulently procured said judgment to be rendered against the complainants, and fraudulently prevented them from availing themselves of a complete defense to said action, without any fault or negligence on their part, or on the part of their attorneys; that immediately on learning that said cause had been tried, and judgment rendered therein, they prepared and forwarded to be filed, a motion for a new trial in said cause, founded upon an affidavit made by said Butler, setting forth the agreement between him and said Hood, but that the court which tried said action had adjourned for the term, before it was possible to file said motion, and that the same was not filed and could not have been, so as to obtain a new trial, according to the rules and practice of the court.

The bill also states that executions have issued upon said judgment to the defendant *Conover*, as sheriff of Milwaukee county, and to the defendant *Donovan*, as sheriff of Sauk county, and prays for an injunction to restrain the collection of said judgment, and for such other or further relief as the case may require. The bill was verified by the affidavit of one of the complainants, and contained a release of errors in the proceedings at law.

*Nelson Roth* and *Volkert W. Roth* filed separate answers, without oath, as required by the bill, denying that the property for which the action of trover was brought, was the property of *Volkert*, but alleging that it was the sole property of said *Nelson Roth*, and that the judgment in said action was according to justice and right. The statements in the answers, as to the agreement between Mr. Butler and Mr. Hood, and the bringing on of the trial, in violation of that agreement, it is not necessary here to repeat, as the court in its opinion, assumes that the allegations of the bill in that behalf were sufficiently proved, and disposes of the case upon another ground; and the testimony introduced in support of those allegations, is for the same reason omitted.

Replications to the answers were filed.

On the hearing of the case, the only evidence was that of E. L. Buttrick and A. R. R. Butler, who were the attorneys employed by the present complainants to defend the action of trover. Mr. Buttrick testified as follows, in reference to the defense which the complainants had to that suit : "We considered that we had a good defense on the merits; we were prepared to defend the suit, and had it not been for the arrangement between Mr. Hood and Mr. Butler, we should have gone to Mineral Point the first day of the term ; we had prepared our defense and sent a commission to take testimony in Buffalo." Mr. Butler testified upon that point as follows: "We believed that there was a good defense (in the action of trover) to the entire cause of action, and we set up, by plea and notice, what we believed to be a good and substantial defense on the merits, and what we believed could be sustained by the proofs. I believe that if the facts of our defense had been given in evidence on the trial of the action, we would have defeated a recovery."

On cross examination, Mr. Butler stated : "I have no personal knowledge, except by information acquired as attorney on inquiring, of the facts of the defense in the trover case. My whole knowledge in the matter was derived from hearsay."

Mr. Buttrick also testified to one fact not alleged in the bill, namely, that he started to Mineral Point on Monday, the

22d of September, 1855, for the purpose of applying to have the judgment in said action opened and a new trial granted, but upon reaching Madison he was informed by *Volkert W. Roth*, that the court had adjourned immediately after the action was tried, and therefore did not go to Mineral Point; but that he had since been told by *Mr. Roth* that he was mistaken, and that the court did not in fact adjourn till Tuesday or Wednesday of the next week.

The circuit court was of opinion that the remedy of the complainants was full and complete in the circuit court of Iowa county, upon application for a new trial; and also that the complainants had failed to furnish evidence that they had a good defense in the action at law, and therefore dismissed the bill. From this judgment, exceptions having been duly taken, the complainants appealed.

*Finches, Lynde & Miller*, for appellants:

Among the grounds of equitable jurisdiction, is relief against frauds in verdicts, judgments, decrees, and other judicial proceedings. 1 Story's Eq. Jur., § 252.

Equity will relieve by injunction where a judgment has been obtained by fraud, or undue advantage. *Davis vs. Tileston*, 6 How. (U. S.,) 114; *Moore vs. Gamble*, 1 Stockton Ch. Rep., 246.

A fraudulent judgment is void in equity as regards the party defrauded. *Humphries vs. Bartee*, 10 Smedes & Marshall, 282; *Nelson vs. Rockwell*, 14 Ill., 375.

Courts of equity have power to enjoin against the prosecution of a judgment at law; when by reason of any equitable circumstances, of which courts have cognizance, it is unconscientious for the judgment creditor to pursue it. *Carrington vs. Halabird*, 17 Conn., 537; *Countess of Gainesborough vs. Gifford*, 2 P. Wms., 424; *Huebschmann vs. Baker*, 7 Wis., 542.

Where the defendant is prevented from taking proper measures to defend the action, by the fraudulent assurances of the plaintiff that the suit shall be carried no further, or that no defense is necessary, chancery will interfere to prevent the guilty party from profiting by his own fraud. *Lee vs. Baird*, 4 Hen. & Mun., 427; *Wilrich vs. De Toga*, 2 Gilman, 385;

June Term,
1860.

ABLEMAN et al.
v.
ROTH et al.

*Truett* vs. *Wainwright,* 4 id., 418; *Brookes* vs. *Whitson,* 7 Smedes & Marshall, 513; *Huggins* vs. *King,* 3 Barbour, 616; *Booth* vs. *Stamper,* 6 Georgia, 172; *Webster* vs. *Skipwith,* 4 Cush. (Miss.,) 341; *Pearce* vs. *Olney,* 20 Conn., 544.

II. The complainants had no remedy at law. Mr. Butt-·rick, but for the false and fraudulent misrepresentations of *Roth,* would have gone to Mineral Point, and been there, as the fact turns out, in time to have made his motion to set aside the verdict, before the expiration of the term. He could not make the motion after the term had expired. Rules of Territorial Court; Rules of Circuit ·Court. But even if we could have made the motion at the next term of the court, we were not obliged to adopt that course. We had our remedy either by motion or bill. It was for the complainants to make the election. It is hard to imagine how a court of law could finally settle the contest, when contradictory *ex parte* affidavits are produced by both the parties. What could the circuit court of Iowa county have done, upon a motion founded upon and resisted by *ex parte* affidavits in this case?

The court has only to read the bill and answers, to see that it would have been almost impossible for that court to have settled the rights of the parties on such a motion. But by the aid of chancery, the real and true facts are brought out. *Truett vs. Wainwright,* 4 Gilman, 418.

*Emmons, Van Dyke & Hamilton,* for respondents:

I. The bill no where alleges, nor was it attempted to be shown, what the pleadings were in· the suit at law, so that the court might judicially determine, whether any evidence, of the character supposed by the complainant to constitute a defense, was admissible or not.

II. The complainants had a full and complete remedy at law, by application to the circuit court of Iowa county, to set aside the judgment, and for a new trial. There is no jurisdiction exercised by courts of record, where a wider range of discretion is allowed, than in the granting of new trials. 1 Gra. & Wat., on New Trials, 7 et seq.;· *People vs. Supr. Court of ·New York,* 5 Wend., 114. Until the adoption of a different rule by the code, the discretion thus exer-

cised was not reviewable upon error. See cases collected in 3 U. S. Dig., 558, § 213. If the circuit court had in fact adjourned when complainants heard of the judgment, they ought to have applied for a stay of proceedings, under rule 37, of the circuit court rules in force at that time. In *Huebschmann vs. Baker*, 7 Wis., 542, the judgment was by default, and the entire term had gone by. Courts of law will always grant new trials for the causes alleged by the complainant. The proper application in this case would have been a motion to set aside the judgment, based upon an affidavit of merits, and of the facts showing it to have been unfairly obtained. It was in fact a default, not for lack of a plea, but a default of appearance at the trial. In such cases, it is the universal practice of courts, to entertain motions to set aside judgments, when made within any reasonable time, and the non-appearance can be excused. *Soulden vs. Cook*, 4 Wend., 217. Courts of law are constantly in the habit of entertaining motions to set aside judgments, as having been inequitably obtained. *Cogswell vs. Vanderbergh*, 1 Caines' Rep., 155 ; *Denton vs. Noyes*, 6 John., 296 ; *Campbell vs. Bristol*, 19 Wend., 101; *Meacham vs. Dudley*, 6 Wend., 514; *Manf. & Mech. Bank vs. Boyd*, 3 Denio, 257.

III. The complainants offered no proof whatever in support of the allegation in the bill that they had a defense to the action at law. It would be idle for courts of equity to grant new trials by way of injunction, without knowing whether or not the party had any defense. Two things must concur : first, it must clearly appear that the party seeking relief has a clear and undoubted defense, upon the merits, to the action at law, and this must be demonstrated by proof as in any other cause in equity; and, secondly, it must appear that the party has been prevented from setting up such defense, by fraud, accident, or mistake, unmixed with any fault, or negligence, on his part. Willard's Eq. Jur., 356, et seq.; 2 Story's Eq. Jur., §§ 894, 895, 896. See *Truly vs. Wanzer*, 5 How. (U. S.), 142 ; *Marine Insurance Co. vs. Hodgson*, 7 Cranch, 332 ; 2 Story's Eq. Jur., §§ 887, 888 ; 3 Johns. Ch. Rep., 356; *Vilas & Bacon vs. Jones*, 1 Coms., 283 ; *Dodge vs. Strong*, 2 Johns. Ch. Rep., 228 ; *Mayor of London*

*vs. Levy*, 8 Vesey, 404; Story's Eq. Pl., §§ 250, 259; Waterman's Eden on Inj., 69, Note 2; 2 U. S. Eq. Digest, 70, "Injunction." II. "To prevent and stay proceedings at law."

*By the Court*, DIXON, C. J.    These three cases depend upon substantially the same state of facts, and may therefore be disposed of by one opinion.   The views which we have taken, render it unnecessary for us to discuss or determine, whether or not courts of equity have concurrent jurisdiction with courts of law in granting new trials, in actions pending in courts of law.   Admitting that they have the power to do so, and that they will exercise it in all cases where the courts of law, in which the actions were pending, would, if the applications had been to them; and admitting, also, that the bills here filed are framed for the purpose of obtaining new trials merely, on account of intervening circumstances, which operated to prevent the plaintiffs from making their defenses, and that they are not designed to obtain permanent and final relief upon facts and circumstances connected with the original controversy, still we are of opinion that the judgment of the circuit court must be affirmed.

The new trials are asked on the ground of fraud.   The fraud is alleged to have consisted in the dishonest and treacherous practices of an agent of the defendants, by which the plaintiffs and their attorneys were deceived and prevented from appearing at the first trials, and making their defenses. The bills also allege that the plaintiffs have good and valid defenses to the original actions, which, if they had not been thus deceived and prevented, they could and would have established.   On the trials in the court below, the deceitful practices were sufficiently made out, but no legal evidence was offered, proving, or tending satisfactorily to prove, that the plaintiffs had defenses to the whole or any part of the causes of action set forth in the original suits.

The only testimony upon that branch of the cases, was the statements of the two attorneys for the plaintiffs (the defendants in the original suits), neither of whom testified to any knowledge whatever of the facts.   One said, "we considered that we had a good defense on the merits;" the

other, "we believed there was a good defense to the entire cause of action, and we set up by plea and notice, what we believed to be a good and substantial defense on the merits, and what we believed could be sustained by the proofs." Tested by the rules which ordinarily govern courts of law and equity in the admissibility and weight of evidence, these statements are entirely incompetent to establish the existence of such defenses. They are hardly sufficient to raise the most shadowy presumption that they existed, or that the judgments, proceedings upon which the plaintiffs seek to restrain, are not in themselves perfectly fair and equitable. It was urged, though not very strenuously, by the appellants' counsel, that in this respect, cases like the present are to be excepted from the general rule. But we know of no warrant or authority for this; nor can we discover any substantial reason why it should be so. We were asked to establish this distinction, in analogy to what was said to be the practice in courts of law, upon applications for new trial. It was said that in those courts, where the proceeding is by motion founded upon *ex parte* affidavits, statements upon information and belief are sufficient, and, therefore, they should be so held in equity. But here, again, we are at fault. We do not so understand the rule at law. With some rare exceptions, the reasons for which must be clearly shown, we understand the practice there to require the affidavits to be made by witnesses, who can testify to a knowledge of the facts concerning which they speak. In the present case, the witnesses do not even depose that they have any information, credible or otherwise, concerning the facts set up by way of defense. It was likewise said that in a court of law judgments like those against which the plaintiffs seek relief, would be set aside without affidavit of merit. No authority was cited, and we know of no case where a judgment regularly obtained will be set aside, without merits being shown. It was furthermore said that the rule of evidence in equity should be relaxed, because the obtaining of a new trial at law is an easy matter, for the reason that the proofs are *ex parte*, the witnesses not subject to cross-examination, and counter affidavits touching the merits of the controversy

cannot be received. If the meaning of this is, and we can discover no other, that courts of law, by reason of their mode of proceeding in such matters, are more easily deceived and imposed upon by perjury and falsehood than courts of equity, it furnishes the strongest reason why the latter should the more stringently exercise their powers to ascertain the truth. We see no reason for changing the rules of evidence in cases of this.nature, and the plaintiffs, having elected or been compelled to seek redress in a court of equity, must be held to a compliance with the law and practice of that court.

The cases, therefore, turn upon the question, whether it was, or was not, necessary for the plaintiffs to give evidence, establishing, or tending to establish, that they had good defenses, which they had set up by way of plea or notice to the original actions. Upon this question, we are clearly of opinion. that it was necessary for them to do so, for two reasons : first, because, without such proof, the charge of fraud was not made out; and, second, because a court of equity will not disturb or restrain proceedings upon a judgment at law, unless such judgment be unjust and inequitable in itself.

Upon the first, we say that no deceptive, cunning, or treacherous art or practice, is a fraud, in its legal or equitable sense, unless it results in loss or damage to another. It may be morally dishonest, wrong and indefensible; but it is not actionable in the courts. To be so, it must be injurious. Legal or equitable fraud is well defined by Judge Story (1 Story's Eq. Jur., § 187). He says: "Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions and concealments, which involve a breach of legal or equitable duty, trust or confidence, justly reposed, *and are injurious to another, or by which an undue or unconscientious advantage is taken of another.*" The presumption of law is in favor of the justice of every judgment of a court of competent jurisdiction. There was but one way for the plaintiffs to have shown that the deceitful practices complained of were injurious, or that thereby undue or unconscientious advantages were obtained over them, which was by show-

ing that they had defenses, or in other words, that the judg-
ments were, in whole or in part, unfounded. This they did
not do, and therefore the fraud is not shown. The bills al-
lege that by the deceptions practiced, they were cheated out
of their defenses. Can the court determine that this was
so, until they establish that they had them? Manifestly it
cannot.

Upon the second reason we say, that all courts and writ-
ers agree, that equity interferes to stay proceedings at law,
only to prevent injustice by the unfair use of the process of
the courts in which proceedings are pending. The funda-
mental and governing principle is, that it is against con-
science to permit the party enjoined to proceed. In case of
a judgment, it must be shown to be against conscience to
allow it to be executed; otherwise the powers of the court
will not be called into exercise. In addition to this, the in-
jured party must show, either that he could not have avail-
ed himself of the facts which make it unjust, in the court of
law, or that he was prevented from so doing by fraud, acci-
dent or mistake, without negligence on the part of himself
or his agents (2 Story's Eq. Jur., § 887, and cases there cited).
Courts of equity will not interfere to grant a new trial, where
no substantial right has been lost, and no unfair advantage
gained, simply because, by some trick or artifice, a judg-
ment, which is just and equitable in itself, has been obtain-
ed in advance of the time when it would otherwise have
been rendered. In this respect they follow the practice of
courts of law, with whom it is said to be a rule of universal
application and controlling efficacy, that where substantial
justice has been done, no new trial will be granted; and
that their discretion consists in deciding this fundamental
question (2 Graham and Waterman on New Trials, 47). It
must appear that the judgment is either wholly or partially
unfounded, or that the damages were excessive. They do
not stay proceedings at law, merely on account of any irreg-
ularity or defect of jurisdiction in the court where the action
is pending, or when no process has been served on the de-
fendant (2 Story Eq. Jur., § 898; Sear vs. Woodward, 8 Ala.,
500, 767.

June Term,
1860.

Ableman et al.
v.
Roth et al.

It is impossible to perceive how the plaintiffs, in these cases, are in a worse position than they would have been, if no process in the original suits had ever been served upon them. In the case of *Chambers vs. Hoadley,* 4 Bibb, 284, a new trial at law was decreed, on account of fraud in procuring the officer to change his return of *non est inventus,* and contrary to the truth, to return the process executed, *it likewise appearing that the judgment was unjust.* In the case of *Stokes vs Knarr,* decided at the present term, this court determined that it would not grant an injunction to restrain proceedings upon the judgment of a justice of the peace, which, for the sake of the decision, was admitted to be void for want of jurisdiction in the justice at the time it was rendered, because it was not alleged in the complaint that such pretended judgment was inequitable and unjust. The defect of jurisdiction was alleged to have consisted in an illegal adjournment of the cause, after receiving the verdict of the jury, and before pronouncing judgment, as required by statute, whereby jurisdiction was lost. The record being regular on its face, and the time to appeal having expired, the defendant sought relief in equity, which, for the reasons above stated, was denied. The means of taking advantage of the defect at law having been lost by lapse of time, the judgment became as good for all purposes of enforcing payment of the honest debt, as a valid one would have been. It was a kind of "illegal justice," which equity would not disturb.

As to the extent to which the proof that injustice has been done, ought to go, we are of opinion that in proceedings in equity, for a new trial merely, the same rule should prevail as at law. The defense need not be made out clearly and beyond any doubt; but enough should be shown to make it reasonably doubtful in the mind of the court, whether the merits have been fully and fairly tested and determined; and if it is probable from the testimony, that the party applying might succeed, or if he produces such evidence, as convinces the court that he should have an opportunity of submitting his case to a jury, the application should be

granted. Graham & Waterman, *supra*, and authorities there cited; *Cummins vs. Kennedy*, 4 J. J. Marsh., 642.

The judgments of the circuit court are affirmed, with costs.