MASSACHUSETTS BENEFIT LIFE ASS'N v. LOHMILLER et al.

(Circuit Court of Appeals, Seventh Circuit. May 16, 1896.)

No. 281.

1. EQUITY JURISDICTION — ENJOINING COLLECTION OF DEFAULT JUDGMENT — AVERMENTS AS TO NOTICE.

In a suit by a foreign insurance corporation to enjoin the enforcement of a default judgment against it, mere allegations that service was made on agents not authorized to receive the same, instead of upon the duly-authorized state officer, and that defendants "remained silent," and "concealed" the fact of such service, until after the end of the term at which the judgment was rendered, are not sufficient grounds for granting an injunction, in the absence of any averment that complainant did not in fact have any knowledge of the suit in time to make a defense.

2. SAME—SHOWING DEFENSE ON MERITS.

The enforcement of a default judgment will not be enjoined by a federal court when there is color of claim that due service was made, that the complainant had notice, and that the cause of action was founded on a liquidated and prima facie demand, unless complainant also shows a good defense on the merits. White v. Crow, 4 Sup. Ct. 71, 110 U. S. 183, and Ableman v. Roth, 12 Wis. 81, followed.

3. FEDERAL COURTS—EQUITY JURISDICTION—STATE STATUTES.

Although a state statute cannot restrict or limit the equity powers of the federal courts, yet its provisions may be justly observed, to the extent to which the court is authorized to exercise a discretion; within the general rules of equity jurisprudence. Cowley v. Railroad Co., 16 Sup. Ct. 127, 159 U. S. 569, followed.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

The Massachusetts Benefit Life Association, appellant, is a corporation of the state of Massachusetts, engaged in the business of "life insurance

on the assessment plan," and had complied with the requirements of an act of the general assembly of the state of Illinois, approved June 22, 1893, which authorized its transaction of business in that state, and was operating therein accordingly. The appellee John C. Lohmiller, at the March term, 1895, of the circuit court for Adams county, in that state, had obtained entry of a judgment on default against the appellant for $3,030 and costs, upon a declaration in assumpsit, on a policy of $3,000 issued by the association in favor of Lohmiller on the life of his wife, Kate Lohmiller, since deceased. After the expiration of the term of the state court the association filed its bill in chancery in the circuit court of the United States for the Southern district of Illinois, to enjoin all proceedings for the enforcement of the judgment so entered, and applied for a temporary injunction in accordance with the prayer of its bill. The hearing of the application was had upon the bill and amendments thereto,—including an amendment which alleged that B. K. Durfee, insurance commissioner of the state of Illinois, would proceed to revoke the authority of the association to transact business in the state unless such pretended judgment was satisfied, and praying that he be made party defendant and restrained from such action,—and upon the several answers filed, and certain testimony preserved in a bill of exceptions. The injunction was denied, and this appeal is from the order thereupon. Aside from its formal allegations, and certain statements of design to cheat, wrong, and defraud the complainant, the bill of complaint alleges a single ground for relief against the judgment at law, namely, that it is invalid for want of legal service of the summons upon the defendant therein; that pursuant to a requirement in that behalf of the act referred to, for its admission to transact business in the state of Illinois, the association had appointed, in writing, the proper officer of that state, designated by the act, to be its "true and lawful attorney, upon whom all process in any action or proceeding against it may be served, and had no other attorney or person within the state upon whom process might lawfully be served"; that, disregarding such provision and appointment, the summons in the action was served upon William C. Abrams and Mathew Jansen, as agents of the association, who "were not persons upon whom service of process might lawfully be made within the state," and made no service upon the officer so appointed. It is further alleged that such service was made by direction of the plaintiff in the action, and his attorney, with full knowledge of the premises, "and for the purpose of concealing" from the complainant "the fact that a suit had been filed and commenced"; that they concealed "from the court the fact that valid service of summons in said alleged suit had not been made," and procured judgment by default; that they remained silent, and concealed from the complainant the fact of such action, until the expiration of the term at which the judgment was rendered. The act of the general assembly approved June 22, 1893, provides for the incorporation of "life and accident insurance companies on the assessment plan," and for "control of such companies in this state and other states doing business in this state," and, by its twenty-second section, requires that every such corporation doing business in the state shall appoint, in writing, the auditor of public accounts, or his successor in office, "to be its true and lawful attorney, upon whom all process in any action or proceeding against it be served," with an agreement that service so made "shall be of the same force and validity as if served on the corporation, and that the authority shall continue in force so long as any liability remains outstanding against the corporation" in the state. The auditor is required to give to the corporation immediate notice when process is so served, to forward a copy, and to keep a record showing "the day and hour when such service was made." By the practice act of Illinois (paragraph 5, c. 110, 2 Starr & C. Ann. St. p. 1777), general provision is made for service of process upon an incorporated company, which allows service upon "any agent of said company found in the county," if the president shall not be found therein; and this provision is applicable to foreign corporations engaged in business in the state, as interpreted by uniform decisions of the supreme court. See Johnson v. Insurance Co., 11 Biss. 452, 15 Fed. 97. By the general act concerning corporations (paragraph 26, c. 32, 1 Starr & C. Ann. St. p. 619), it is provided that foreign corporations doing

business in the state "shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers."

Clark Varnum, for appellant.

James N. Sprigg, for appellees.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the statement of the case, delivered the opinion of the court.

By this bill the complainant invokes the equity jurisdiction of the circuit court of the United States for a decree pronouncing a judgment obtained against the complainant upon purported default in the circuit court of Adams county, Ill., "to be null and void, and to have been rendered without due, legal, and proper process," and enjoining any enforcement of said judgment. If redress can be granted upon the allegations contained in the bill, it is manifest that an injunction is necessary to make it effectual. The appeal is taken from an order denying the preliminary injunction prayed for, after a hearing upon the bill of complaint and amendments, the several answers, and certain testimony. The arguments of counsel are mainly directed to two propositions which are asserted on behalf of the appellant as ground for intervention against the judgment, substantially as follows: First. That the chancery powers of the federal court are sufficient to grant this relief in favor of a judgment defendant who is not a citizen of the state, and was not subjected to the jurisdiction of the state court by legal service of its process, when the statutory time had expired within which an application could there be made to open the judgment; that the fact of the alleged invalidity of service is concealed of record by the absence of any allegation showing that the corporation defendant is either foreign, or engaged in "life insurance on the assessment plan"; and that the failure to disclose want of jurisdiction upon the face of the record renders the appellant remediless, without the aid of equity. And it is urged that the prohibition upon the federal courts against granting injunctions to stay proceedings in any court of the state, —which is preserved in section 720 from the judiciary act of 1793, —as interpreted in recent decisions by the supreme court, does not operate to bar the jurisdiction of equity to deprive a party of the benefits of a judgment so obtained; citing Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, and other cases. Second. That the statute of Illinois under which this corporation was admitted to transact business in the state prescribes the appointment of the auditor as its agent to receive service of process when suits were brought therein, and that, such appointment having been made, this special provision was exclusive of all other methods of service; that the service in question, made, ostensibly under the general statute, upon an agent not so authorized to receive service, was of no effect to confer jurisdiction, but was intended to impose upon the state court, and obtain inequitable advantage over the defendant, and accom-

plished that purpose. The prayer of this bill could be granted only upon an affirmance of both these propositions, but whether they are true need not be considered, because the bill is defective in other fundamental requisites.

The writ of injunction is aptly called the "strong arm of equity." It must be employed only for the enforcement of rights, or the prevention of wrongs, in accordance with the principles of equity, and in cases which are clearly of equitable cognizance. The exercise of the power is one of great delicacy, and requires strict adherence to the well-settled rules by which it is limited and guarded against abuse. This caution is of special importance when it is sought to enjoin proceedings upon a judgment in another court. As remarked in Truly v. Wanzer, 5 How. 141, 143, an injunction—

"Never should be permitted to issue when it is even suspected that it will be prostituted to the unworthy purpose of delaying, vexing, and harassing suitors at law in the prosecution of their just demands."

The elementary rule which must govern has been repeatedly declared by the supreme court, that:

"A court of equity does not interfere with judgments at law unless the complainant has an equitable defense of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents." Hendrickson v. Hinckley, 17 How. 443, 445; Knox Co. v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 257.

The application must rest upon clear and unqualified equities, and "not upon any mere legal grounds." 3 Pom. Eq. Jur. § 1361. In the language of Lord Redesdale:

"It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere." Bateman v. Willoe, 1 Schoales & L. 204.

In addition are the following invariable requirements:

"That whosoever would seek admission into a court of equity must come with clean hands; that such a court will never interfere in opposition to conscience or good faith; and again, and in intimate connection with the principles just stated, that it will never be called into activity to remedy the consequence of laches or neglect, or want of reasonable diligence." Creath's Adm'r v. Sims, 5 How. 192, 204.

This bill avers, with many repetitions and adjectives, that there were fraud and concealment in the conduct of the defendants; but the allegations are all predicated on the fact that the service of process in the suit was procured to be made on the two agents, who had no authority to receive it, and not upon the duly-appointed "officer of the state," whose designation for the purpose is alleged to have been known to the defendants, and that the appellees "refrained from advising" the appellant of the suit and judgment, "remained silent" about the same, and "concealed" the fact until after the expiration of the term of court. These allegations are without force, beyond the facts stated, and obtain no strength through the adjectives employed. There is no allegation that the defendants were in collusion with the agents who received service, nor of any concealment or suppression by the latter; nor is it even alleged that actual

notice of the suit and of the judgment failed to reach the complainant in time to have obtained hearing in the state court on the alleged defect in service, to set it aside, or to vacate the judgment. No rule of equity pleading is better settled than that which declares "that a bill must state all the facts on which the complainant's right to relief rests, with certainty and clearness, and positively." Story, Eq. Pl. § 241; Brokaw v. Brokaw, 41 N. J. Eq. 215, 220, 7 Atl. 414.

The question of actual knowledge, which is here evaded and left at large, is of fundamental importance for the establishment of an equity. The court cannot intervene to correct or set aside the judgment for either irregularity or invalidity, as such, for it has no jurisdiction over the law courts for revision of errors. The rule is stated in Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, that:

"In such case the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment of decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

The definition given by Mr. Justice Bradley in Barrow v. Hunton, 99 U. S. 80, 82, and reaffirmed in subsequent decisions, clearly marks the distinction between questions which are closed to equity, and those which come within its cognizance:

"In the one class, there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees, of the state courts; and, in the other class, the investigation of a new case, arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

See, also, Arrowsmith v. Gleason, 129 U. S. 86, 99, 9 Sup. Ct. 237; Knox Co. v. Harshman, 133 U. S. 152, 154, 10 Sup. Ct. 257; Marshall v. Holmes, 141 U. S. 589, 597, 12 Sup. Ct. 62; Cowley v. Railroad Co., 159 U. S. 569, 579, 16 Sup. Ct. 127.

In the light of these authorities, if it be conceded that the complainant was not properly served, and that the judgment was voidable, or even void, that condition is not of itself sufficient to warrant interference; but an equity must be presented, aside from that bare circumstance, showing that the injured party was without knowledge, was taken by surprise, and had no opportunity, in fact, to obtain a hearing. So far as appears from the allegation of this bill, the complainant may have possessed full and timely information of all the proceedings, but refrained from making any motion, relying upon the assumed defect, and if such were the fact the remedies are legal only. Neglect of the opportunity which was then open for a hearing would bar equitable relief. "Whenever a competent remedy or defense shall have existed at law, the party who may have neglected to use it will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice." Creath's Adm'rs v. Sims, 5 How. 192, 204. No presumption can be indulged of the want of knowledge, and the manifest evasions here, and the uncontroverted fact that service was made upon an actual agent, would lead strongly to

the contrary presumption of fact. If the complainant had no such knowledge or opportunity, the bill should so allege, and, failing therein, presents no ground for an injunction.

The bill is silent in another respect, of which these principles of equity generally require clear expression before relief can be extended. There is no impeachment of the cause of action upon which the judgment was rendered, nor suggestion of defense in whole or in part; and, for all that appears in the record, the policy of life insurance referred to in the bill, and set out in the answer, is an undisputed and matured obligation against the complainant, and justly enforceable as adjudged. If that is the true situation, interference would serve only "the unworthy purpose of delaying, vexing, and harassing suitors at law in the prosecution of their just demands," so pertinently denounced in Truly v. Wanzer, supra. It furthermore appears from the terms of the policy that it limits the time within which suit may be brought thereon, and that such time has expired. There is no suggestion in the bill of any waiver of the limitation, and, unless waiver were imposed by the court as a condition of interference, the right of action would probably be barred. The rule is invariable that equity will not enjoin a judgment procured through fraud or artifice unless the complainant can "aver and prove that it had a good defense upon the merits." White v. Crow, 110 U. S. 183, 187, 4 Sup. Ct. 71, citing Ableman v. Roth, 12 Wis., 81, and other cases; Freem. Judgm. § 498; 1 High, Inj. § 228. Ableman v. Roth, supra, is a leading case upon this subject, and Chief Justice Dixon there says:

"Courts of equity will not interfere to grant a new trial where no substantial right has been lost, and no unfair advantage gained, simply because, by some trick or artifice, a judgment which is just and equitable in itself has been obtained in advance of the time when it would otherwise have been rendered."

The authorities are not in unison in holding the same rule where the judgment was obtained without service of process, and where the defendant had no opportunity to be heard. In some jurisdictions it is maintained that the defendant will not be required to show a good defense in such case, the judgment being void, and the reasons therefor are variously stated, namely, that "there is no presumption in favor of the judgment creditor," and "neither reason nor sound policy will require a defendant so imposed upon to try the merits of the cause on a petition in chancery to set aside the judgment"; "that the injury of which he justly complains is that a judgment was rendered against him without notice and without defense." Blakeslee v. Murphy, 44 Conn. 188; Ridgeway v. Bank, 11 Humph. 523; Bell v. Williams, 1 Head, 229; Finney v. Clark, 86 Va. 354, 10 S. E. 569. And in Dobbins v. McNamara, 113 Ind. 54, 14 N. E. 887, and Magin v. Lamb, 43 Minn. 80, 44 N. W. 675, the same view is held, but apparently grounded upon the rule which there governs in the law courts to open such judgments without inquiry into the merits. The preponderance of authority in the state courts is, however, the other way, and upholds the rule "that equity will not interfere until it appears that the result will be other or different from that already

reached." Freem. Judgm. § 498; Taggart v. Wood, 20 Iowa, 236; Gerrish v. Seaton, 73 Iowa, 15, 34 N. W. 485; Stokes v. Knarr, 11 Wis. 389; Harris v. Gwin, 10 Smedes & M. 563; Stewart v. Brooks, 62 Miss. 492; Secor v. Woodward, 8 Ala. 500; Dunklin v. Wilson, 64 Ala. 162; State v. Hill, 50 Ark. 458, 8 S. W. 401, disaffirming Ryan v. Boyd, 33 Ark. 778; Gifford v. Morrison, 37 Ohio St. 502; Wilson v. Hawthorne, 14 Colo. 530, 24 Pac. 548; Sharp v. Schmidt, 62 Tex. 263; Pilger v. Torrence, 42 Neb. 903, 61 N. W. 99; Colson v. Leitch, 110 Ill. 504. No such exception to the general rule appears to have found recognition in the practice of the federal courts, and its incorporation would not harmonize with the principle that equity will not enforce rights upon grounds which are wholly legal or technical, nor "grant an injunction to stay proceedings at law merely on account of any defect of jurisdiction of the court." 2 Story, Eq. Jur. § 898. For the purposes of the case at bar, it is not necessary to determine whether a showing of meritorious defense may not, under some circumstances, be dispensed with where the judgment was obtained without service, notice, or color of right, as it would even then be discretionary with the court to require it before granting an injunction. But the exercise of sound judicial discretion would exact it here, for the reason that there was at least color of claim that due service had been made, that the complainant had notice, and that the cause of action is founded on a liquidated and prima facie demand; and, in the same view, it is at least worthy of consideration that the statute of Illinois provides that "only so much of a judgment shall be enjoined as complainant shall show himself equitably not bound to pay." 1 Starr & C. Ann. St. p. 1284, c. 69, § 7. Although the statute of a state may not restrict or limit the equity powers of a federal court, its provisions may justly be observed, to the extent to which discretion can be exercised, within the general rules of equity jurisprudence. Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127. This requirement is equitable. It does not impose upon the complainant the burden of proving a defense beyond doubt, but exacts the presentation of facts which carry conviction "that he should have an opportunity of submitting his case to a jury." Ableman v. Roth, 12 Wis. 81, 92. Failing in these material averments, the bill furnishes no grounds for an injunction, and the order of the circuit court is affirmed.