

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. 0-2260
Re: Whether or not the printing or engraving
of liquor revenue stamps is the class
of work provided for in Article 16,
Section 21 of the Constitution of Texas
and Article 685, Vernon's Revised
Civil Statutes, 1925, and the authority
of the Texas Liquor Control Board to
design such stamps.

We have your three letters, one of which is dated
April 19, 1940, and two dated April 23, 1940. In these letters
you present the following facts:

The revenue stamps now being used by the Liquor Control
Board were manufactured by the lithograph layer built process.
In arriving at the conclusion that such stamps were best for
the purposes desired, it is shown that other styles and makes of
stamps were carefully studied by previous members of the Board
of Control and by the Liquor Control Board and were found to
have the objections of being so tough or pliable as to encourage
the re-use of stamps. On January 25, 1940, you wrote the Board
of Control and stated that in view of the facts that the present
supply of stamps was being rapidly depleted and that there was
no contract now in force for the furnishing of such stamps, you
deemed it advisable to let a contract for the printing of stamps.
You further stated, in this letter, "No change in the design
or type of stamps now being used is considered necessary."

We are then referred to Section 45, Article I of the
Texas Liquor Control Act. It is stated that, in conformity with
this provision, sample sheets of the stamps now being used were
sent out to prospective bidders, along with specifications, by the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Board of Control and that by accepting these samples and furnishing them to the bidders together with the specifications covering the samples, the Board of Control accepted the suggestion of the Liquor Control Board.

On March 12, 1940, seven bids were opened in the office of the State Board of Control and the prices submitted, per thousand stamps, were:  (1) 44.5¢; (2) 40.5¢; (3) 39.875¢; (4) 42.6¢; (5) 37.25¢; (6) 42.75¢, and (7) 33.95¢.  According to your information the contract has been awarded to the highest bid price, namely, 44.5¢ per thousand stamps.

Assuming that the contract is let to the highest bidder and basing the future need of stamps on past records, you make the following statement:

"Summing up the whole situation and assuming that the contract be awarded at the bid price of 44½¢ per one thousand, the total cost of stamps needed during the fiscal year 1940-41 will approximate $16,570, which is $4,570 in excess of the amount appropriated by the legislature for liquor, wine, and beer stamps."

After presenting the above facts, you request our opinion on the following question:

"1.  Do you consider the authority of the Texas Liquor Control Board as established in the Texas Liquor Control Act for the designing of stamps as to include the size, shape, composition, and method of printing, that is, as to whether such stamps shall be printed by lithograph or engraved steel methods, and whether past experience as to the use of stamps now provided may be legally urged by the Texas Liquor Control Board as to any stamps to be contracted for in the future?

"2.  After defining the authority and responsibility of the Texas Liquor Control Board in response to question one will you please advise if it is essential that the Texas Liquor Control Board prescribe the design and other specifications, if authorized to do so, by a regularly adopted rule and regulation?

"3.  Do you consider the printing of revenue stamps as within that class of work referred to as stationery and printing in the above mentioned Article XVI, Section 21 of the Constitution of Texas which would require that the contract be approved by the Governor, Secretary of State, and Comptroller?

"4. Do you consider the printing of revenue stamps as within that class of work referred to under the above mentioned Articles 607 to 630b, R.C.S.?

"5. If your answer to questions 3 and 4 above are in the affirmative, would any contract entered into by any department of the Government which does not conform to the provisions of the Constitution and the Revised Civil Statutes, herein mentioned, be legal and binding, and may the Texas Liquor Control Board expend any appropriated funds in payment for stamps printed under any such contract?

"6. Your valued opinion is also requested as to whether or not a contract would be legal which would create an obligation against the Texas Liquor Control Board and the State of Texas in excess of the amount of funds appropriated by the Legislature for such purpose."

An answer to your first question necessarily calls for a construction of Article I, Section 45, Texas Liquor Control Act, which is Article 666-45, Vernon's Penal Code. The pertinent part of this statute provides:

"(a). It shall be the duty of the Texas Liquor Control Board and the Board of Control to have engraved or printed all necessary liquor and beer tax stamps as provided in both Articles I and II of this Act. Such stamps shall be of such design and denomination as the Texas Liquor Control Board shall from time to time prescribe and shall show the amount of tax, the payment of which is evidenced thereby, and shall contain the words 'Texas State Tax Paid.' All contracts for stamps required by this Act shall be let by the Board of Control as provided by law. The Texas Liquor Control Board is authorized to expend all necessary funds from time to time to keep on hand an ample supply of such stamps."

The cardinal and paramount rule of construction is to ascertain the intention of the Legislature in having enacted a law, Cousins v. Sovereign Camp W.O.W. (Sup. Ct. of Tex. 1931) 120 Tex. 107, 35 S.W. (2d) 696; and having ascertained this intent, it must be given effect if it is legally possible to do so. Koy v. Schneider (Sup. Ct. of Tex. 1920), 110 Tex. 369, 218 S.W. 479. We must, therefore, determine what the legislative intent was in providing that "such stamps shall be of such design and denomination as the Texas Liquor Control Board shall from time to time prescribe." (Article 666-45, supra.

Ion. Bert Ford, Page 4

The Texas Liquor Control Act was originally enacted as House Bill 77, 44th Legislature, 2nd Called Session, 1935. Section 21 of this bill levied certain taxes on alcoholic liquor and provided that such taxes were to be paid by affixing stamps on each bottle or container of liquor. The Legislature recognized the possibility of attempts to counterfeit these stamps and by virtue of Section 28 provided that any person forging or counterfeiting any stamp provided for in the Act would be deemed guilty of a felony. Having recognized the possibility of the counterfeiting of these stamps, it would seem that the Legislature would have made some provision regarding the type or character of stamps to be used in order to prevent, as far as possible, any such counterfeiting.

Such was the purpose of the Legislature, in our opinion, in providing in Section 45, House Bill 77, supra, that "such stamps shall be of such design and denomination as the Board shall from time to time prescribe." Having ascertained that the intention of the Legislature, in this respect, was to prevent, as far as possible, any counterfeiting or forging of liquor stamps, the words of the statute must be accorded the meaning that comports with this intent. Popham v. Patterson, (Sup. Ct. of Texas, 1932), 121 Tex. 615, 51 S.W. (2d) 680.

In the case of McDonnell v. Wasenmiller (Cir. Ct. App., 1934) 74 Fed. 2d 320, a State Commission in Nebraska entered into a contract with Burns and McDonnell, whereby they were to act as consultant engineers and have the duty of supervising the plan and design of a heating plant which was to serve the University and State Capital. The court in determining the meaning of "design," said:

"Design must include not only the mode of installation, but the type and kind of materials to be used in the construction..."

Such is the meaning of the word "design" as it is used in Article 666-45, Vernon's Penal Code, and in order to give effect to the intention of the Legislature (to prevent, as far as possible, any counterfeiting or forging of liquor stamps), it is the opinion of this department that the Texas Liquor Control Board has authority to specify the size, shape, composition, and method of printing liquor stamps which includes the authority to determine whether such stamps shall be printed by lithograph or engraved steel methods.

Hon. Bert Ford, Page 5

In view of this answer to your first question and the answer to your second question, which follows, we deem it unnecessary to answer the last part of the first question relative to the legality of urging past experiences as a criterion for future stamp contracts.

With reference to your second question, there is no specific provision in the Texas Liquor Control Act (House Bill 77, 44th Leg., 2nd C.S., 1935, as amended by H.B. 5, 45th Leg., R.S., 1937) which would require the Texas Liquor Control Board to prescribe the design of these revenue stamps by a regularly adopted rule or regulation. In the absence of such a requirement, and since it is a well settled proposition that statutes are to be given a reasonable and sensible construction, rather than a strained or technical one (59 Tex.Jur. 172), it is not essential that the Texas Liquor Control Board specify the design of these revenue stamps by a regularly adopted rule or regulation.

It is our opinion that any reasonable means adopted by the Board in specifying the design of these revenue stamps and which is reasonably calculated to notify the Board of Control of the type and character of the stamps which the Liquor Control Board, in the exercise of its sound discretion, deems best for the purposes desired, would be sufficient. Such a construction would be the reasonable one and would comply with the legislative intent.

Your third, fourth and fifth questions are so related that we will consider them together.

After stating that liquor stamps were to be of such design as the Texas Liquor Control Board might prescribe, the Legislature provided:

"... All contracts for stamps required by this Act shall be let by the Board of Control as provided by law..." (Underscoring ours)

Clearly, the Legislature recognized the existence of a law under which contracts for furnishing the necessary stamps could be let. There are only two statutes which the Legislature could have had in mind in this instance. The first of these statutes is Article 603, Vernon's Revised Civil Statutes, 1925, which provides:

Hon. Bert Ford, Page 6

"The Board shall contract for a term of not
exceeding two years with responsible persons,
firms, corporations or associations of persons,
who shall be residents of Texas, for supplying
to the State all printing, binding, stationery
and supplies of like character for all departments,
institutions and boards, save and except such
work as may be done at the various educational
and eleemosynary institutions. Said contract shall
be let to the lowest and best responsible bidder
after public advertising of such proposed letting
for once a week for four consecutive weeks in at
least six newspapers of general circulation in this
State. No two of such papers shall be published in
the same county. The Board may reject any and all
bids; the reason therefor shall be entered in full
in the minutes of the Board and shall be open to
the inspection of the public at all times. New con-
tracts shall be made in the same manner as herein-
before provided." (Underscoring ours)

The second statute is Article 634, Vernon's Revised
Civil Statutes, 1925, and it reads as follows:

"The Board of Control shall purchase all the
supplies used by each Department of the State Govern-
ment, including the State Prison System, and each
eleemosynary institution, Normal school, Agricultural
and Mechanical College, University of Texas, and each
and all other State Schools or Departments of the State
Government heretofore or hereafter created. Such sup-
plies to include furniture and fixtures, technical
instruments and books, and all other things required
by the different departments or institutions, except
strictly perishable goods."

Article 666-45, supra, makes it the duty of the Boards
therein provided for to have all necessary liquor and beer stamps
"engraved or printed." Article 634, supra, relates to the pur-
chase of supplies, whereas Article 608, supra, relates specific-
ally to printing and supplies of like character. Considering
all three of these statutes together, we feel that there can be
no doubt but that the Legislature contemplated that the stamp
contracts would be let under Article 608.

Article 16, Section 21, Texas Constitution, provides:

"Sec. 21. All stationery, and printing, except
proclamations and such printing as may be done at the
Deaf and Dumb Asylum, paper, and fuel used in the
Legislative and other departments of the government,
except the Judicial Department, shall be furnished,
and the printing and binding of the laws, journals,
and department reports, and all other printing and
binding and the repairing and furnishing the halls and
rooms used for the meetings of the Legislature and its
committees, shall be performed under contract, to be
given to the lowest responsible bidder, below such
maximum price, and under such regulations, as shall be
prescribed by law. No member or officer of any depart-
ment of the government shall be in any way interested
in such contracts; and all such contracts shall be
subject to the approval of the Governor, Secretary
of State and Comptroller."

The framers of the Constitution in providing for the
necessary departmental printing provided that the contract should
be let to the lowest responsible bidder, "under such rules and
regulations as shall be prescribed by law." It was, then,
contemplated that the Legislature would enact statutes in
accordance with Article 16, Section 21 of our Constitution
for the purpose of effectuating this provision.

Articles 607 to 630b, inclusive, Vernon's Revised
Civil Statutes, 1925, are the legislative enactments contem-
plated by the framers of our Constitution, and since the print-
ing or engraving of the revenue stamps here in question is that
type of work referred to in Article 608, it necessarily is the
class of work referred to in Article 16, Section 21, of the
Constitution of Texas; and all contracts for the "printing
or engraving" of these stamps must be approved by the Governor,
Secretary of State and Comptroller, as is therein provided.

It is therefore our opinion that your third and
fourth questions should both be answered in the affirmative.

The fifth question presented is a very broad one,
but by referring to question number three, we assume that you
desire our opinion as to whether or not a contract for the
printing of these liquor stamps, which is not approved by the
Governor, Secretary of State and Comptroller, as is provided
for in Article 16, Section 21, Texas Constitution, would be
legal and binding.

In the case of State ex rel State Publishing Co. v. Logan, Secretary of State (Sup. Ct. of Montana, 1899), 56 Pac. 818, the facts showed that the State of Montana had a constitutional provision which in all respects was substantially the same as Article 16, Section 21 of our Texas Constitution. The provision of the Montana Constitution required all printing contracts to be approved by the Governor and the State Treasurer.

In accordance with this provision of the Constitution and the regulations prescribed by law, the Board of Examiners advertised for bids for printing and, having found that the bid of the relator was the lowest and best, awarded the contract to the.plaintiff. Application was made for a writ of mandamus requiring the Secretary of State to deliver copies of the laws to the State Publishing Company to the end that same might be printed. The Company contended there was an existing contract between the State and themselves by virtue of the award made by the Board of Examiners; on the other hand the Secretary of State contended there was no contract because under the Constitution all such printing contracts were subject to the approval of the Governor and the Treasurer, and, if not approved by them, were invalid and in effect no contract.

The court denied the relief requested and in holding that the approval of the Governor and Treasurer was essential before there could be a valid contract, in part, stated:

"... The approval of these officers completes the contract. ... It being indispensable that the agreement of the board shall be approved by the governor and treasurer, before there can be a valid contract, mere allegations that the board of examiners received bids, and made a contract with relator, whose bid was the lowest, are wholly insufficient; ..."

Arkansas has a constitutional provision which, also, is substantially the same as Article 16, Section 21 of our Constitution. The Supreme Court of Arkansas in Ellison v. Olliver (1921) 227 S.W. 586, construing said section, and in holding that a printing contract which had not been approved by the Treasurer (one of the three officers named) was not a valid and binding contract upon the State, in part, said:

"... The section of the Constitution in question provides that all such contracts shall be subject to the approval of the Governor, Auditor, and Treasurer.

Before this is done no contract is made... The language used is plain and unambiguous, and it is apparent that the requirement that the contract shall be approved by the designated officers is mandatory."

We are of the opinion that the above cases are a correct expression of the law in regard to the point here in question, and therefore, as a general rule, an alleged contract for the printing of liquor stamps would not be binding unless it is approved by the Governor, Secretary of State, and Comptroller.

Since, as a general rule, there is no valid contract for printing until it has been approved by the officers named in the above mentioned section of the Constitution, and since the Constitution provides that all printing shall be performed under contract, we are of the opinion that the Texas Liquor Control Board would not be authorized to expend any appropriated funds in payment for stamps unless the contract has been approved by the Governor, Secretary of State, and Comptroller. See Attorney General's Opinions Nos. 0-289 and 0-815.

With regard to your last question, you no doubt have in mind the legality of obligations which might be created by some specific contract. Since we have not seen this contract, or a copy of it, it is impossible for us to pass upon its legality or to determine the extent of the obligations, if any, which it might create against the State.

Trusting that this will satisfactorily answer your questions, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Walter R. Koch
Assistant

By _____
Harry A. Shuford

APPROVED MAY 6, 1940

_____
FIRST ASSISTANT
ATTORNEY GENERAL

HAS:PBP



APPROVED
OPINION
COMMITTEE
BY B4/3
CHAIRMAN